*Manal Kiriakos v. Brandon Phillips*, No. 20, September Term, 2015, *Nancy Dankos, et al. v. Linda Stapf*, No. 55, September Term, 2015, Opinion by Adkins, J.

**NEGLIGENCE—STATUTE OR ORDINANCE RULE—ADULT RESPONSIBILITY FOR UNDERAGE CONSUMPTION OF ALCOHOL:** It is evidence of negligence when an adult intentionally and knowingly allows an underage person to consume alcohol to the point of intoxication on her property, in violation of Md. Code (2002, 2012 Repl. Vol.), § 10-117(b) of the Criminal Law Article ("CR"), and the intoxicated underage person is injured because he could not make an intelligent choice to protect himself. CR § 10-117(b) was designed to protect underage persons from the harm that alcohol poses to them and those third parties injured thereby as a proximate cause of the minor's intoxication.

**NEGLIGENCE—COMMON LAW DUTY—INJURIES TO A THIRD PARTY FROM UNDERAGE CONSUMPTION OF ALCOHOL ON AN ADULT'S PROPERTY:** When an adult furnishes alcohol to an underage person on his property, and intentionally and knowingly allows such consumption, in violation of CR § 10-117(b), the adult increases the risk of harm to others because of the underage person's improper conduct of driving while under the influence of alcohol. The adult may then be subject to a duty to a third person depending upon the circumstances.

**NEGLIGENCE—PROXIMATE CAUSE—UNDERAGE DRINKER'S DECISION TO DRINK ON AN ADULT'S PROPERTY:** When an adult intentionally and knowingly allows an underage person to consume alcohol on his property, in violation of CR § 10-117(b), the underage person's decision to drink alcohol does not, as a matter of law, preclude a finding that the adult is a proximate cause of injuries that flow from the intoxicated underage person's conduct.

Manal Kiriakos v. Brandon Phillips
Circuit Court for Baltimore County
Case No.: 03-C-11-009991
Argued: February 4, 2016

Nancy Dankos, et al. v. Linda Stapf
Circuit Court for Howard County
Case No.: 13-C-12-092909 MT
Argued: February 4, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 20
September Term, 2015

MANAL KIRIAKOS
v.
BRANDON PHILLIPS

No. 55
September Term, 2015

NANCY DANKOS, ET AL.
v.
LINDA STAPF

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Harrell, Glenn T., Jr. (Retired,
    Specially Assigned)
Wilner, Alan M. (Retired,
    Specially Assigned),

JJ.

Opinion by Adkins, J.

Filed: July 5, 2016

* Battaglia, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

Although young people "are close to a lifelong peak of physical health, strength, and mental capacity,"[1] they are still developing in profound ways suggesting that they, in contrast to adults, are not capable of handling the more dangerous elements this world offers. *See* Terry A. Maroney, *The False Promise of Adolescent Brain Science in Juvenile Justice*, 85 Notre Dame L. Rev. 89, 100 (2009) ("[B]y the early 2000s neuroscience supported the notion that teen brains are structurally and functionally different from those of both children and adults."). Prominent among these dangers, and front and center in these cases, is alcohol. Today we address to what extent adults who allow underage persons to drink alcohol on their property—in violation of Md. Code (2002, 2012 Repl. Vol.), § 10-117(b) of the Criminal Law Article ("CR")—are liable for injuries arising from the youth's intoxication.

The harm that alcohol poses to youths is pernicious, pervasive, and deadly[2] especially when motor vehicles are involved. *See* H.B. 299, Fiscal & Policy Note, 2009 Reg. Sess., at 5 (Md. 2009) ("According to the U.S. Department of Transportation, alcohol-impaired driving is one of the nation's deadliest crimes."); *id.* (explaining that, among all

---

[1] Nat'l Inst. of Mental Health, The Teen Brain: Still Under Construction at 2 (2011), *available at* http://www.nimh.nih.gov/health/publications/the-teen-brain-still-under-construction/teen-brain_141903.pdf [https://perma.cc/7Y7H-2PM3].

[2] *See* Comm. on Developing a Strategy to Reduce and Prevent Underage Drinking, Nat'l Research Council & Inst. of Med. of the Nat'l Acads., Reducing Underage Drinking: A Collective Responsibility 59 (2004), *available at* http://www.nap.edu/read/10729/ [https://perma.cc/S2PF-8H4A]. In the early 2000s, the National Research Council and the Institute of Medicine of the National Academies established this committee in response to a request from Congress for a study of underage alcohol consumption in light of "the increasing level of public concern" about this issue. *Id.* at 15–16.

fatally injured alcohol-impaired drivers, the percentage of such drivers aged 16 to 20 "has hovered around 25%" since 1995).[3]

Maryland established the minimum drinking age of 21 in 1982. *See* Maryland Code (1957, 1996 Repl. Vol.), § 400A of Article 27; H.B. 85, Reg. Sess. (Md. 1982).[4] Unsurprisingly, underage people attempt to drink in spite of this law. One way underage people can circumvent a minimum drinking age law is to turn to adults over 21.

The General Assembly targeted adults in the fight to protect youths from alcohol when, in 1996, it enacted CR § 10-117(b). CR § 10-117(b), which contains exceptions not pertinent to the cases before us,[5] states that "an adult may not knowingly and willfully

---

[3] The General Assembly gathered the above information in reenacting statutes in the Criminal Law Article, including Md. Code (2002, 2012 Repl. Vol.), § 10-117 of the Criminal Law Article ("CR"), which we discuss *infra*. S*ee also* Johns Hopkins Bloomberg Sch. of Pub. Health, Ctr. on Alcohol Marketing and Youth, Consequences of Underage Drinking (2007), *available at* http://www.camy.org/resources/fact-sheets/consequences-of-underage-drinking-surgeon-general [https://perma.cc/9BVH-3QXN] ("Annually, about 5,000 people under age 21 die from alcohol-related injuries involving underage drinking. Approximately: 1,900 (38 percent) of the 5,000 deaths involve motor vehicle crashes."); Nat'l Inst. on Alcohol Abuse and Alcoholism, Underage Drinking: Fact Sheet at 1 (2016) ("Alcohol is the most widely used substance of abuse among America's youth, and drinking by young people poses enormous health and safety risks."), *available at* http://pubs.niaaa.nih.gov/publications/UnderageDrinking/Underage_Fact.pdf [https://perma.cc/UT66-KNEJ].

[4] Congress passed the National Minimum Drinking Age Act in 1984 to induce all States to set the minimum drinking age at 21. *See* 23 U.S.C. § 158.

[5] An adult would not be held criminally responsible in the event the underage person is within the adult's "same immediate family" or drinking as part of a "religious ceremony." *See* CR § 10-117(c)(2). Technically, the General Assembly enacted this law in Article 27 as Section 401A, but then transferred it to the Criminal Law Article in 2002. *See* Act of Oct. 1, 1996, ch. 441, 1996 Md. Laws 2747, 2748; *see also* Act of Oct. 1, 2002, ch. 26, 2002 Md. Laws 197, 1021–22; Act of Oct. 1, 2002, ch. 213, 2002 Md. Laws 1764, 1771 (transferring the law to the Criminal Law Article). We shall refer to the law here by

allow an individual under the age of 21 years actually to possess or consume an alcoholic beverage at a residence, or within the curtilage of a residence that the adult owns or leases and in which the adult resides."

It is against this backdrop that we confront two cases with the dangerous common denominator of underage people drinking alcohol on an adult's property, and then leaving that property in a motor vehicle. With respect to both cases, the facts are as alleged by the Petitioners in their complaints, or in the Kiriakos case, in the Motion For Summary Judgment, Opposition, or attachments thereto. In both cases, the consumption of alcohol was done with the knowledge and consent of the adult property owner.

## FACTS AND LEGAL PROCEEDINGS

### Case No. 55: Dankos

17-year-old Steven Dankos ("Steven") became intoxicated during a party at Linda Stapf's house on the evening of November 28, 2009.[6] When Steven left early the next morning, still intoxicated, he rode in the bed of David Erdman's pickup truck. Erdman, another intoxicated partygoer who was 22 years old, crashed the truck shortly after leaving, and Steven was killed.

---

its current name and location under the Criminal Law Article of the Maryland Code, CR § 10-117(b).

[6] In both cases, we shall refer to the age of the parties at the time of the events discussed herein.

When Stapf first came home during the party, she found a large crowd at her house.[7] Stapf told her son Kevin that some people would have to leave, but she permitted him and some others to continue partying in the garage. Although Stapf knew some (like Kevin) were under 21 and some under 18, she allowed them to keep drinking.

During the party, Stapf sat in the kitchen near the garage and played solitaire. Alcohol was kept in the garage and made available to all guests. At least four times, she entered the garage to observe the goings-on. Although Stapf asked them to turn down the music, she did not ask or tell them to limit or stop drinking.

When Kelsey Erdman ("Kelsey") approached Stapf in the kitchen to express her concerns about her brother driving while intoxicated, Stapf did nothing. Stapf did not tell Kelsey to drive Erdman home, nor call Erdman's parents, nor even check on his condition. Stapf also did not attempt to prevent any intoxicated guests from driving off her premises.

Erdman crashed shortly after leaving the party. Steven, who rode in the truck bed, was ejected and killed.[8] The State charged Stapf with violating CR § 10-117(b), but ultimately stetted this charge.

---

[7] Steven Dankos and his classmates at River Hill High School viewed the Stapf house as a "party house." Linda Stapf allowed persons under the legal drinking age of 21, including her 19-year-old son Kevin, to drink there nearly every weekend.

[8] The State of Maryland charged David Erdman with the commission of a homicide with a motor vehicle under the influence of alcohol, in violation of CR § 2-503. Erdman pleaded guilty and received a five-year sentence, with all but 18 months suspended.

In May 2013, Nancy Dankos, Steven's mother, filed an amended complaint ("Amended Complaint"),[9] alleging various claims against Stapf that sounded in negligence: common law social host liability; breach of duties arising out of Maryland criminal law statutes;[10] breach of a duty to act;[11] a wrongful death claim; and a survival action. Stapf filed a motion to dismiss for failure to state a claim, arguing principally that Dankos had failed to allege the breach of a legally cognizable duty. The Circuit Court for Howard County granted the motion in substantial part.[12]

Following her timely notice of appeal,[13] the Court of Special Appeals affirmed. *Davis v. Stapf*, 224 Md. App. 393, 398, *cert. granted sub nom. Dankos v. Stapf*, 445 Md. 4 (2015).[14] Although the intermediate appellate court concluded that Dankos properly alleged a duty, it still affirmed the dismissal for lack of proximate cause. *Id.* at 424–25.

---

[9] Nancy Dankos ("Dankos") filed her original complaint in November 2012.

[10] These statutes are CR §§ 3-204, 3-602.1, and 10-117(b).

[11] As is clear from our review of the intermediate appellate court's opinion, *infra*, Dankos articulated this duty as arising out of a special relationship, *in loco parentis*, and as a duty that she assumed as a result of her conduct.

[12] Shortly after the hearing, Dankos dismissed with prejudice her remaining claim, which was against an insurance company.

[13] Dankos did not appeal the Circuit Court's dismissal of her claim of common law social host liability. *Davis v. Stapf*, 224 Md. App. 393, 413 n.7, *cert. granted sub nom. Dankos v. Stapf*, 445 Md. 4 (2015). Dankos did appeal the Circuit Court's dismissal of her claim of negligence arising out of a statutory duty, but only with respect to CR § 10-117(b), not CR §§ 3-204 or 3-602.1. *Id.* at 401 n.1.

[14] We amended the caption of this case following an order for a judgment of divorce in which Dankos changed her name from Davis back to Dankos.

5

The court's conclusion about proximate cause was also fatal to Dankos's other claims of breach of a duty. *Id.* at 425–29.

## Case No. 20: Kiriakos

Manal Kiriakos was walking her dogs on the sidewalk one morning when 18-year-old Shetmiyah Robinson, driving a large sport utility vehicle, hit Kiriakos, causing her life-threatening injuries.[15]

The prior afternoon and evening, Robinson had been working with Brandon Phillips and another man at Phillips's house.[16] They began drinking a bottle of vodka and some champagne around 10:00 p.m. Phillips himself mixed the vodka in Robinson's drink with orange juice. Phillips, age 26, knew that Robinson was 18, that Robinson had driven to Phillips's house and would have to drive to leave, and that Robinson had too much to drink. Because of the quantity Robinson consumed,[17] Phillips told Robinson to "watch what he's drinking." Phillips also offered to let Robinson sleep at his place, but said that Robinson

---

[15] At no time was Manal Kiriakos walking in the road. One of Kiriakos's dogs was also injured in the collision.

[16] The nature of Phillips's relationship with Robinson is not entirely clear, but Phillips appears to have served as a music mentor to Robinson. *See* Robinson Dep. 46:18–46:22, Dec. 15, 2011 (Question: "Your son [Robinson] used terms like he's [Phillips] sort of a mentor in the music field." Answer: "That's my understanding of it, but my understanding only can go as far as what my son tells me."); *see also* Baltimore County Police Department Crash Supplement, Ex. D, at 3 ("At night he [Robinson] works in his friend's music studio in Dundalk doing technical production work.").

[17] While Kiriakos averred in her Opposition to the Motion for Summary Judgment that Phillips served Robinson "at a minimum, 12 ounces of vodka and one-third of a bottle of champagne," the exhibits she attached to the Opposition do not clarify or confirm the exact amount(s) of alcohol Phillips gave Robinson.

6

could leave "whenever he was ready" if he "was sure that he was going to be able to drive." Robinson decided to wait for the effects of the alcohol to wear off, and left around 4:00 or 5:00 a.m.

Robinson struck Kiriakos about one hour later. The officer who arrived at the scene detected "a strong odor" of alcohol on Robinson's breath. This officer also noticed that Robinson's eyes were bloodshot and that vomit was on his sweatshirt. Robinson consented to a preliminary breath test, which measured a BAC of .088. Based on the sobriety test, among other things, the officer placed Robinson under arrest.[18] At the precinct, Robinson consented to take a breath test, which measured a BAC of .08.

Kiriakos filed an amended complaint against multiple defendants,[19] including Phillips. The sole count against Phillips sounded in negligence. Kiriakos alleged that Phillips owed a duty "to the public in general," including her, not to provide alcohol and illegal drugs to someone "under-aged" when he knew or should have known the under-aged person would drive under the influence of alcohol and drugs. Phillips filed a motion for summary judgment, arguing that "Maryland does not recognize social host liability for serving alcohol." After a hearing, the Circuit Court for Baltimore County granted Phillips's

---

[18] In the Statement of Probable Cause, this same officer later wrote that Shetmiyah Robinson's ("Robinson") blood alcohol content ("BAC") and lack of sleep were the causes of the accident. Robinson pleaded guilty to driving under the influence.

[19] The amended complaint ("the Amended Complaint") contained a count of negligence against Robinson and a count of negligent entrustment and vicarious liability against Robinson's parents and the company Robinson's father owned. The vehicle Robinson drove when he struck Kiriakos was owned by Robinson's father. Kiriakos later settled with the Robinson family.

7

motion, refusing to find that Phillips owed Kiriakos a legal duty, and explaining that "I'm bound by the law as it exists in the present day and Maryland simply has consistently refused for other reasons to extend liability that far." The Court of Special Appeals, in an unreported opinion, affirmed the Circuit Court's grant of summary judgment.

## STANDARD OF REVIEW

We review for legal correctness a trial court's decision to grant a motion to dismiss for failure to state a claim. *Rounds v. Md.—Nat'l Capital Park & Planning Comm'n*, 441 Md. 621, 635–36 (2015). At this stage, we shall assume the truth of those facts and allegations in the complaint, and all inferences reasonably drawn therefrom. *Id.* at 636.

On appeal from the grant of summary judgment, we "independently review the record" to ascertain whether there is a genuine dispute of material fact and, "if not, whether the moving party is entitled to judgment as a matter of law." *Wells Fargo Home Mortg., Inc. v. Neal*, 398 Md. 705, 714 (2007) (citation and internal quotation marks omitted). When, as here, we discern no genuine dispute of material fact,[20] we must determine whether the trial court was legally correct in granting summary judgment, and accord the trial court's decision no deference. *Id.*

## DISCUSSION

With respect to both cases, we hold that there exists a limited form of social host liability sounding in negligence—based on the strong public policy reflected in CR § 10-117(b), but that it only exists when the adults in question act knowingly and willfully, as

---

[20] Accepting the facts as stated by Kiriakos, Phillips argues that "they do not give rise to a claim for negligence" against him.

8

required by the statute. As we explain, *infra*, this knowing and willful requirement removes any issue of contributory negligence on the part of the underage drinker vis-à-vis his claim against the adult, even though the cause of action otherwise sounds in negligence. We address the specific questions presented in each case below.

### Case No. 55: Dankos

We granted Dankos's Petition for Writ of Certiorari to address the following questions:[21]

> 1. Where the Court of Special Appeals found Stapf owed a duty of care to Steven arising from her alleged violation of CR § 10-117(b), did it err in concluding that Petitioners could not, as a matter of law, establish Stapf was the proximate cause of Steven's injuries?
>
> 2. Where Petitioners alleged that a special relationship existed between the youth on Stapf's property and Stapf, did the Court of Special Appeals err when [it] failed to recognize a cause of action arising from this special relationship based on its conclusion that Petitioners could not, as a matter of law, establish that Stapf was a proximate cause of Steven's death?

---

[21] We have rephrased her questions as styled in the Petition for Writ of Certiorari:

> 1. *Duty imposed by statute* – Was Steven an intended protectee of [CR] § 10-117(b), which prohibits adult property owners from allowing minors to consume alcoholic beverages on their premises?
> 2. *Duty imposed by special relationship* – Does Maryland recognize a duty of care arising from the special relationship between a parent hosting an underage drinking party on her property and a minor attendee who the parent permitted to attend and consume excessive amounts of alcohol?

9

Because we answer yes to the first question, we shall reverse without reaching the second question.

All of the counts in Dankos's complaint sounded in negligence. A plaintiff bringing a negligence claim must establish four elements: "a duty owed to him (or to a class of which he is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages." *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 531 (1986). Dankos contends that CR § 10-117(b) creates a legal duty for Stapf, a homeowner, to prevent Steven, a minor, from consuming alcohol on her premises.[22] Additionally, Dankos argues that because this duty arises out of a statute and not the common law, the proximate cause analysis is not governed by archaic common law cases such as *State for Use of Joyce v. Hatfield*, 197 Md. 249 (1951). In her view, the Circuit Court incorrectly granted the motion to dismiss because she properly alleged that Stapf was a proximate cause of Steven's injuries. First we address Stapf's duty to Dankos, and then we move to proximate causation.

**Duty**

We have often explained that a statute or ordinance can prescribe a duty and that "'violation of the statute or ordinance is itself evidence of negligence.'" *Blackburn Ltd. P'ship v. Paul*, 438 Md. 100, 111 (2014) (quoting *Brooks v. Lewin Realty III, Inc.*, 378 Md.

---

[22] Dankos, of course, acknowledges that CR § 10-117(b) limits that duty to those instances where the consumption of alcohol is not for religious purposes and where the minor is unrelated to the homeowner. *See* CR § 10-117(b).

70, 78 (2003)). Under this rule ("the Statute or Ordinance Rule"),[23] Dankos must meet two prerequisites to establish a prima facie case in negligence: (1) show "the violation of a statute or ordinance designed to protect a specific class of persons [], and [(2)] that the violation proximately caused the injury complained of." *Id.* at 112 (citations and internal quotation marks omitted). The Statute or Ordinance Rule is not a means to establishing negligence per se but only prima facie evidence of negligence. *See id.* at 126; *Polakoff v. Turner*, 385 Md. 467, 478 (2005); *cf.* W. Page Keeton et al., Prosser and Keeton on Torts § 36, at 230 (5th ed. 1984) ("A large number of courts have held that a violation is only evidence of negligence, or prima facie evidence thereof, which may be accepted or rejected according to all of the evidence.").[24]

### Statute or Ordinance Rule: The Protected Class

CR § 10-117, Dankos avers, is designed to protect a specific class of persons: people under 21 who are unrelated to the homeowner and who are not consuming alcohol for religious purposes. According to Stapf, Dankos misinterprets CR § 10-117(b)—the statute does not, in her mind, serve to protect a specific class of people. For support, Stapf draws upon the legislative history that indicates to her the General Assembly's concern with drinking and driving, a broad public problem. To resolve their dispute, we start with the

---

[23] We refer to this rule now, as we have before, as the Statute or Ordinance Rule. *Blackburn Ltd. P'ship v. Paul*, 438 Md. 100, 111 n.6 (2014).

[24] An exception to this rule arises where the statute itself explains that a violation thereof is negligence per se, which CR § 10-117(b) does not. *See id.* at 126 ("Of course, this cause of action cannot sound in negligence per se, because COMAR 10.17.01.01 *et seq.* does not expressly provide so.").

11

cases discussing a doctrine we have called the Statute or Ordinance Rule—in aid of determining whether CR § 10-117 is sufficiently focused on a specific class to create a duty.

In *Brooks*, 378 Md. at 78, the Court reviewed the history of the Statute or Ordinance Rule: "[a]lmost ninety years ago, our predecessors in *Flaccomio v. Eysink*, 129 Md. 367, 380 (1916), held that 'the violation of a statute . . . is itself sufficient to prove such a breach of duty as will sustain a private action for negligence, . . . and that the true rule in such cases is that the violation is presumptive evidence of negligence.'" (Citing cases spanning 50 years). This is a "well-settled Maryland common law rule [] long [] applied by this Court in negligence actions." *Id.*

*Brooks* concerned a lead paint poisoning negligence action arising out of alleged violations of the Baltimore City Code, which mandated "removal of flaking, loose, or peeling paint." *Id.* at 82. Applying the Statute or Ordinance Rule, the *Brooks* Court explained that the plaintiff, a boy, was "obviously within a class of persons which the Housing Code was designed to protect." *Id.* at 81 (citing *Brown v. Dermer*, 357 Md. 344, 367 (2000)) ("Patently, by enacting §§ 702 and 703 of the Housing Code, the City Council sought to protect children from lead paint poisoning by putting landlords on notice of conditions which could enhance the risk of such injuries."). Reasoning that because the boy's "injury, lead poisoning, is the kind of injury intended to be prevented by the Code," we held that he had established a prima facie case in negligence. *Id.* at 89.

*Blackburn* is also instructive.[25] In *Blackburn*, 438 Md. at 125–26, we held that Code of Maryland Regulations ("COMAR") 10.17.01.21—requiring fences with certain specifications be maintained around swimming pools—protected a specific class of persons, namely, children under the age of five. Although the petitioners argued that the regulatory provision did not name a specific protected class, we disagreed because COMAR incorporated a code which identified such a class: "children in the most at-risk age group, less than five (5) years of age." *Id.* at 122–26 (emphasis omitted); *see also Brooks*, 378 Md. at 81 ("Patently, by enacting §§ 702 and 703 of the Housing Code, the City Council sought to protect children from lead paint poisoning by putting landlords on notice of conditions which could enhance the risk of such injuries.") (quoting *Brown*, 357 Md. at 367).

In *Warr v. JMGM Group, LLC*, 433 Md. 170, 195–99 (2013), on the other hand, we held that the defendant tavern owners did not owe a duty to the plaintiffs under a criminal statute prohibiting the sale of alcohol to visibly intoxicated persons.[26] (Referring to Maryland Code (1957, 2011 Repl. Vol.), § 12-108(a)(1) of Article 2B). Our holding was grounded in our conclusion that the statute was part of a scheme designed to protect a general class of people: "[t]he statutes regulating the sale of alcohol and prohibiting its

---

[25] The question in *Blackburn*, 438 Md. at 103–05, 127–28, was whether an owner, manager, and pool operator at an apartment breached a statutory duty to a three-year-old boy who suffered severe brain injury when he nearly drowned in a pool after gaining access to it through an allegedly defective gate.

[26] The plaintiffs in *Warr* were victims of a car accident involving a car driven by an adult who became intoxicated at the defendant's tavern. *Warr v. JMGM Group, LLC*, 433 Md. 170, 173–74 (2013).

13

provision to those visibly intoxicated were enacted 'for the protection, health, welfare and safety of *the people of this State*.'" *Id.* at 198 (quoting Article 2B, § 1-101(a)(3)) (emphasis added).

Relevant to this case, CR § 10-117(b) states that "an adult may not knowingly and willfully allow *an individual under the age of 21 years* actually to possess or consume an alcoholic beverage at a residence, or within the curtilage of a residence that the adult owns or leases and in which the adult resides." (Emphasis added.) The law holds adults criminally responsible for underage drinking under specific circumstances. Like the regulation in *Blackburn*, CR § 10-117(b) identifies a specific class that the General Assembly sought to protect: underage people exposed to alcohol. The text of the statute makes clear to us the General Assembly's concern for this specific class. *See also Allen v. Dackman*, 413 Md. 132, 156–57 (2010) (determining that the Housing Code was intended to protect "occupants of dwellings" because the code said so). We disagree with Stapf's assertion that CR § 10-117(b) "was not designed to protect a singular class of persons." Moreover, we do not hesitate to apply the Statute or Ordinance Rule on different facts than in prior cases because this is a rule of "broad applicability." *Blackburn*, 438 Md. at 115 (acknowledging the rule's applicability in the context of lead paint cases, sediment control regulations, and animal control statutes, among others).[27]

---

[27] Thus, we are not persuaded by Stapf's argument that liability cannot be found because this statute protects underage drinkers, but also implicates a "limited potential harm to the public as a whol[e]."

14

Other courts have determined that underage persons constituted a protected class in statutes similar to CR § 10-117(b). *See Newsome v. Haffner*, 710 So. 2d 184, 185–86 (Fla. Dist. Ct. App. 1998) (concluding that a duty of care on adult social hosts arose out of a criminal statute because the law was "clearly designed to protect minors from the harm that could result from the consumption of alcohol"); *Hansen v. Friend*, 824 P.2d 483, 485–86 (Wash. 1992) ("[The statute] prohibits persons from furnishing liquor to a minor. The statute defines 'minor' as any person under the age of 21 years . . . . Hansen was 15 years old when the incident occurred and therefore was a member of the protected class."); *Longstreth v. Gensel*, 377 N.W.2d 804, 812–13 (Mich. 1985) ("Section 33 was meant to protect a class of persons, *i.e.*, those under the legal drinking age, and this plaintiff falls within that class."); *see also Estate of Hernandez by Hernandez-Wheeler v. Ariz. Bd. of Regents*, 866 P.2d 1330, 1339 (Ariz. 1994) (statute criminalizing the furnishing of alcohol to an underage person); *Sage v. Johnson*, 437 N.W.2d 582, 583–85 (Iowa 1989) ("[A] minor injured as the result of consuming alcoholic beverages furnished in violation of Iowa Code section 123.47 is not necessarily precluded from pursuing a claim against the person furnishing the alcohol . . . ."); *Congini by Congini v. Portersville Valve Co.*, 470 A.2d 515, 518 (Pa. 1983) ("Section 6308 of the Crimes Code represents an obvious legislative decision to protect minors and the public at large from the perceived deleterious effects of serving alcohol to persons under twenty-one years of age."); *cf. Marcum v. Bowden*, 643 S.E.2d 85, 89 (S.C. 2007) ("As other courts have explained, such exceptions logically

15

require us to construe these 'giving' statutes to protect only the person under 21 who consumes the alcohol[] not the general public.").[28]

In addition, Stapf points to out-of-state cases that do not give us pause because none of those cases are analogous in any meaningful way to this dispute. *Coons v. Berry*, 304 S.W.3d 215, 223 (Mo. Ct. App. 2009) (refusing to determine whether the statute was intended to protect a class of persons because the revised statute was enacted several years after the plaintiff filed her petition and could not be applied retroactively);[29] *Pike v. Bugbee*,

---

[28] We are also not persuaded by the legislative history Stapf draws from to bolster her argument about the class that CR § 10-117(b) is purportedly designed to protect. Turning to the latest reenactment of CR § 10-117(b), which Stapf draws our attention to, we observe that the General Assembly did not then make a single change to subsection (b). Act effective Oct. 1, 2009, 2009 Md. Laws 2741, 2743–44. Among other things, the General Assembly created a statute whereby an adult who violates CR § 10-117(b) is guilty of a misdemeanor and subject to a fine. H.B. 299, Fiscal & Policy Note, 2009 Reg. Sess., at 1–2 (Md. 2009); *see* CR § 10-121(b). Certainly that legislative enactment is designed to foster compliance with CR § 10-117(b), but it is irrelevant for purposes of our analysis of the Statute or Ordinance Rule because the 2009 legislation did not alter the protected statutory class: underage people exposed to alcohol.

[29] Our research indicates that the Missouri Court of Appeals recently refused to recognize a civil duty arising out of the statute at issue in *Coons v. Berry*, 304 S.W.3d 215 (Mo. Ct. App. 2009), a statute similar to CR § 10-117(b), and on facts strikingly similar to those before us. *Otte v. Edwards*, 370 S.W.3d 898, 902–03 (Mo. Ct. App. 2012). The court's reasoning, however, is unpersuasive. In *Otte*, the court stated that "[v]iolations of [the relevant statute] have already been considered by Missouri appellate courts and uniformly rejected as bases for civil claims." *Id.* at 902. The only case that the *Otte* court points to involving the revised version of the statute was *Coons*, but as we indicated, the stumbling block for the plaintiff in *Coons* was the fact that she filed a petition years before the statute was revised. *Coons*, 304 S.W.3d at 223. Moreover, although the *Otte* court stated that "[w]e are also unable to find anything in [the relevant statute] or historical background indicating any legislative intent to create such a civil cause of action based on the misdemeanor," the court did not supply any bases in support of its conclusion. *Otte*, 370 S.W.3d at 902–03. In light of the application of our Statute or Ordinance Rule case law, and the text and legislative history surrounding CR § 10-117(b), *supra*, the decision in *Otte* does not dissuade us from the conclusion that we reach today.

16

974 A.2d 743, 748–49 (Conn. App. Ct. 2009) (refusing to impose parental liability based upon a statute because the plaintiff failed to allege that the defendant was a minor as required by the statute); *Willis v. Omar*, 954 A.2d 126, 132 (R.I. 2008) (refusing to apply statute concerning "liquor licensees or their employees or agents" to other individuals); *Farmers & Mech. Mut. Fire Ins. Co. of W. Va. v. Hutzler*, 447 S.E.2d 22, 24–25 (W. Va. 1994) (recognizing merely that the relevant statute was inapplicable to the appellants—owners of property where alcohol was served—because the statute only applied to sellers of alcohol); *Canady v. McLeod*, 446 S.E.2d 879, 881–82 (N.C. Ct. App. 1994) (affirming summary judgment against the plaintiff because the plaintiff lacked evidence to satisfy the substantial certainty test to prevail under North Carolina's Workers' Compensation Act).

In conclusion, we hold that CR § 10-117(b) does protect a particular class of persons, that is, persons under 21. We now proceed to the second step in the Statute or Ordinance Rule analysis.

*Statute or Ordinance Rule: Proximate Cause*

Under the second prong of the Statute or Ordinance Rule, Dankos must show "that the violation proximately caused the injury complained of." *Blackburn*, 438 Md. at 112 (citations and internal quotation marks omitted). To establish proximate cause in this context, Dankos must show that Steven "is within the class of persons sought to be protected [by the statute], and [that] the harm suffered is of a kind which the drafters intended the statute to prevent." *Id.* (citations and internal quotation marks omitted). Dankos contends that Steven, a minor, is a member of the class that CR § 10-117(b) seeks

17

to protect, and that he also suffered the harm this statute is designed to prevent. That harm, in her view, is the risk or danger to which alcohol exposes underage persons.

CR § 10-117(b) prohibits adults from allowing "an individual under the age of 21 years actually to possess or consume an alcoholic beverage." CR § 10-117(b). The statute seeks to prevent harm to underage persons as a result of their consumption of alcohol, as is repeatedly expressed in the legislative history for this statute. Those in support of the bill that became CR § 10-117(b) evinced a deep concern for the protection of underage people from alcohol and the risks alcohol poses to them and the loss of judgment that leads to risky behavior—like getting into a car with a fellow partygoer who is too impaired to drive.[30] Letter from Melvin Stern, Chair, Legis. Comm., Am. Acad. of Pediatrics, to Hon. Joseph F. Vallario, Jr., Chairman, H. Judiciary Comm. (Jan. 30, 1996) ("Not only does this [adult-sanctioned drinking by teens in their home] endanger the teen with the opportunity to display risky behaviors, but it tells the teen that underage drinking is acceptable."); Letter from Bonnie M. Holmes, Exec. Dir., Md. Underage Drinking Prevention Coal., to Hon. Joseph F. Vallario, Chairman, Jr., H. Judiciary Comm. (Feb. 7, 1996) ("Coalition members feel strongly that this bill will serve a great purpose by reducing the number of adult sanctioned underage drinking parties and the resulting often deadly consequences to our young people."); Md. Underage Drinking Prevention Coal., Legislation Fact Sheet: H.B.

---

[30] The General Assembly recently revised CR § 10-117 and CR § 10-121 by imposing greater penalties—including the possibility of incarceration—for furnishing or allowing underage persons to drink whom the adult host knows or reasonably should know will drive after drinking, and where, as a result, the underage driver causes serious injury or the death of another. These new subsections of the Criminal Law Article take effect Oct. 1, 2016. *See* Act of Oct. 1, 2016, ch. 513, 2016 Md. Laws 3.

18

# 267, at 2 ("This bill makes adults responsible for monitoring the behavior of children and youth at their residence and prohibiting a dangerous and illegal behavior, underage drinking."). This review of the legislative history is quite at odds with Stapf's contention that there was no legislative "concern for the protection of underage non-drivers who are provided alcohol." *See also* Letter from Gail H. Ewing, President of the Montgomery Cnty. Council, to Hon. Joseph F. Vallario, Jr., Chairman, H. Judiciary Comm. (Feb. 14, 1996) ("The tragic story involving Tiffany Fouts, who was drunk, raped and left outside to die [of hypothermia], shows the consequences of adults who ignore underage drinking in their homes.").[31]

Other jurisdictions have discerned that harm to underage persons exposed to alcohol is the harm that similar statutes have sought to prevent. *See, e.g.*, *Longstreth*, 377 N.W.2d at 813 ("[The statute] was meant to protect against . . . . the dangerous effects of intoxication of those under twenty-one years of age."). In her complaint, Dankos alleged that Stapf violated CR § 10-117(b). She alleged that Steven was 17 and consuming alcohol on Stapf's property prior to the accident. She further alleged that Steven's "degree of intoxication" inhibited his ability to make a reasonable decision about how to leave the party. Finally, she alleged that Steven's death in the car accident was a direct, proximate result of Stapf's actions. In essence, Dankos alleges that Stapf allowed Steven to get so intoxicated that he might put himself in danger—the very harm that CR § 10-117(b) seeks

---

[31] The heart-wrenching story of Tiffany Fouts put a human face at the forefront of the General Assembly's discussion. We discussed the facts surrounding her death in *Muthukumarana v. Montgomery Cnty.*, 370 Md. 447 (2002).

19

to prevent. We conclude that Dankos has adequately pled the second prong, and thus, that she has adequately pled the duty and breach elements of negligence using the Statute or Ordinance Rule.[32]

## Proximate Cause

We now consider whether she can survive the defense motion to dismiss on the issue of proximate cause. *See Blackburn*, 438 Md. at 126 (concluding, on review of motion for summary judgment, that there was a statutory duty, then noting that the plaintiff "must still produce facts that would allow a jury" to find causation). On this very contentious issue, the parties share one common view: a defendant's negligence is the proximate cause of a plaintiff's injury when the negligence is "(1) a cause in fact, and (2) a legally cognizable cause." *CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 429 Md. 387, 428–29 (2012) (quoting *Pittway Corp. v. Collins*, 409 Md. 218, 243–46 (2009)).

In *Pittway*, we discussed the proximate cause analysis at length. We noted that the first step, causation-in-fact, involves the determination of "who or what caused an action." *Pittway*, 409 Md. at 244. When an injury arises from "two or more independent negligent acts," as in this case, we apply the substantial factor test. *Id.* Thus we ask "if it is 'more likely than not' that the defendant's conduct was a substantial factor in producing the

---

[32] In *Newsome v. Haffner*, 710 So. 2d 184, 185–86 (Fla. Dist. Ct. App. 1998), the court concluded that a civil duty arose out of a criminal statute which is similar to CR § 10-117(b). The Supreme Court of Ohio has also recognized a duty arising out of a statutory prohibition against furnishing alcohol to minors. *Mitseff v. Wheeler*, 526 N.E.2d 798, 800 (Ohio 1988).

[plaintiff's] injuries." *Id.* To determine what "substantial factor" means, we look to the Restatement (Second) of Torts, which we have adopted for this purpose. *Id.* at 244–45.

Under the second step, legally cognizable cause, we "consider whether the actual harm to a litigant falls within a general field [of danger] that the actor should have anticipated or expected." *Id.* at 245. We have called legal causation "a policy-oriented doctrine" to limit liability to those instances where the actor deserves to be held liable. *Id.* In our consideration, we most often—but not exclusively—ask "whether the injuries were a foreseeable result of the negligent conduct." *Id.* at 246.

*The Common Law Rule in Hatfield*

Stapf contends that, under *Hatfield*, "Maryland law is clear that the proximate cause of injury is the actor's decision to drink." As Stapf reminds us, our appellate courts have time and again noted this common law proximate cause rule. *See Hatfield*, 197 Md. at 255. Thus, Stapf concludes, the "nexus between [her] acquiescence and [Steven's] death is far too remote to be considered a proximate cause."

The Court in *Hatfield* stated that "[h]uman beings, drunk or sober, are responsible for their own torts. The law (*apart from statute*) recognizes no relation of proximate cause between a sale of liquor and a tort committed by a buyer who has drunk the liquor." *Hatfield*, 197 Md. at 254 (emphasis added). We recognize that the intoxicated person in *Hatfield* was, as Steven was, a minor. *See Hatfield*, 197 Md. at 251. But *Hatfield* was decided before the enactment of CR § 10-117(b). At the time of *Hatfield*, there was no law similar to CR § 10-117(b), which prohibits adults from allowing underage persons to drink

21

alcohol on their property. The enactment of CR § 10-117(b) reflects a determination by the General Assembly that more protection of youths from alcohol was needed.

In *Ely v. Murphy*, 540 A.2d 54, 55, 58 (Conn. 1988), the Supreme Court of Connecticut concluded that an underage person's consumption of alcohol at a house party did not immunize the hosts for the injuries that the underage person caused another guest. Among other things, state law criminalized furnishing alcohol to minors by social hosts. *Id.* at 57. This and other state laws, the court explained, constituted a "legislative determination that minors are incompetent to assimilate responsibly the effects of alcohol and lack the legal capacity to do so." *Id.* at 58. Because of this legislative framework, the *Ely* court distinguished the premise of the common law proximate cause rule with respect to underage persons: "The proposition that intoxication results from the voluntary conduct of the person who consumes intoxicating liquor *assumes a knowing and intelligent exercise of choice*, and for that reason is more applicable to adults than to minors." *Id.* at 57 (emphasis added).

Many jurisdictions, in addition to Connecticut, agree that underage persons lack full adult capacity to handle alcohol. *See Marcum*, 643 S.E.2d at 89 ("While underage persons have full social and civil rights, we find the public policy of this State treats these individuals as lacking full adult capacity to make informed decisions concerning the ingestion of alcoholic beverages."); *Newsome*, 710 So. 2d at 185 ("The statute makes a violation of this provision a criminal offense, and is clearly designed to protect minors from the harm that could result from the consumption of alcohol or drugs by those who are too immature to appreciate the potential consequences."); *Hansen*, 824 P.2d at 486 ("The

Legislature believed that persons under 21 years of age are neither physically nor mentally equipped to handle the consumption of intoxicating liquor."); *DiOssi v. Maroney*, 548 A.2d 1361, 1368 (Del. 1988) ("The longstanding legislative restriction on the dispensing of alcoholic beverages to minors in Delaware attests to a settled public policy that minors are not deemed free agents in the decision to consume intoxicating beverages or, having done so, are not solely responsible for the harmful consequences of such overindulgence.");[33] *Congini by Congini*, 470 A.2d at 517 ("[O]ur legislature has made a legislative judgment that persons under twenty-one years of age are incompetent to handle alcohol . . . . This legislative judgment compels a different result than *Klein* [*v. Raysinger*, 470 A.2d 507 (Pa. 1983)], for here we are not dealing with ordinary able bodied men."); *cf. Sage*, 437 N.W.2d at 584 ("A minor consumer of alcoholic beverages should not automatically be precluded from recovering damages resulting from the effects of alcohol" because such persons, "particularly those who are very young or immature, cannot be said to have been so negligent or to have assumed so much of the risk involved . . . .").

We do not go so far as the courts reaching the bald conclusions that minors under the age of 21, as a group, are not "free agents," or "are not legally competent to handle alcohol," or that they "are incompetent to assimilate responsibly the effects of alcohol," or that they "are neither physically nor mentally equipped to handle the consumption of intoxicating liquor." We view CR § 10-117(b) as a recognition by the General Assembly, based on convincing evidence, that children under 21 are often less able to make

---

[33] The court in *DiOssi v. Maroney*, 548 A.2d 1361, 1365, 1368 (Del. 1988), ultimately imposed a duty based on premises liability, not social host liability.

responsible decisions regarding the consumption of alcohol and, as a result, are more susceptible to harming themselves or others when presented with the opportunity to drink in excess in a social, peer-pressured setting. It therefore carved out that specific class for special protection against adult social hosts who knowingly and willfully allow consumption of alcoholic beverages on their property.

At least two conclusions relevant to the cases before us flow from that legislative recognition and determination. First, upon a finding that the social host defendant **knowingly and willfully** allowed a member of the protected class to consume alcohol on the host's premises in violation of the statute, in an action against the social host brought by or on behalf of the minor or, as in the Kiriakos case, by an injured third party, such conduct—if it substantially contributed to a diminution of the underaged person's ability to act in a reasonable manner, and thereby caused injury—can be found to be a substantial factor in bringing about the harm to the underage person himself or to a third party. *See Eagle-Picher Indus., Inc. v. Balbos*, 326 Md. 179, 208–09 (1992) (enunciating substantial-factor causation rule). This conclusion partakes both of the duty and proximate cause components of an action based on negligence. Second, contributory negligence is not a defense in an action by a protected class member against a social host defendant. That is as far as we need to go in these cases.

Other courts have ruled that a social host claim does not fail as a matter of law on the issue of proximate cause. *See Estate of Hernandez by Hernandez-Wheeler*, 866 P.2d at 1341 ("A minor is similar to an adult who has diminished judgment and capacity to control his alcohol consumption . . . . Nor are considerations of proximate causation a

reason to conclude there is no liability as a matter of law in all cases."); *DiOssi*, 548 A.2d at 1368 (determining the case on premises liability but also concluding that a minor's voluntary consumption of alcohol is not an intervening cause sufficient to relieve a social host of liability to a third party); *Ely*, 540 A.2d at 58 ("[L]ogic dictates that their [minors'] consumption of alcohol does not, as a matter of law, constitute the intervening act necessary to break the chain of proximate causation and does not, as a matter of law, insulate one who provides alcohol to minors from liability for ensuing injury."); *Longstreth*, 377 N.W.2d at 813–14 (rejecting the traditional rule that the drinking of alcohol is the proximate cause of the injury); *Koback v. Crook*, 366 N.W.2d 857, 859–61 (Wisc. 1985) (same), *superseded by statute on other grounds*, 1985 Wis. Sess. Laws 625, Wis. Stat. Ann. § 125.035; s*ee also Linn v. Rand*, 356 A.2d 15, 19 (N.J. Super. Ct. App. Div. 1976) ("[A] social host who serves excessive amounts of alcoholic beverages to a visibly intoxicated minor, knowing the minor was about to drive a car on the public highways, could reasonably foresee or anticipate an accident or injury as a reasonably foreseeable consequence of his negligence in serving the minor.").

We view CR § 10-117(b) as a substantial development in the law from the days of *Hatfield*. Guided by the statute, we conclude that Steven's decision to drink did not render the nexus between Stapf's conduct and his death too remote to preclude Stapf's conduct, as a matter of law, from being considered a proximate cause of his death. Accordingly, the

common law rule in *Hatfield* poses no bar to a claim of social host liability predicated on

CR § 10-117(b) for injuries to a minor intoxicated on the adult's property.[34]

*Causation-in-Fact*

In examining causation-in-fact, we are mindful that proximate cause is ordinarily a

jury question. *Lashley v. Dawson*, 162 Md. 549, 562 (1932) ("The true rule is that what is

proximate cause of an injury is ordinarily a question for the jury."); *see also Pittway*, 409

Md. at 253 ("It is well established that, 'unless the facts admit of but one inference . . . the

determination of proximate cause . . . is for the jury.'") (citation omitted).[35]

---

[34] In reviewing out-of-state cases that Stapf has cited to advance her proximate cause argument, we find them meaningfully distinguishable and even unhelpful to her position. *Mohr v. Matthews*, 768 S.E.2d 10, 12–13 (N.C. Ct. App. 2014) (affirming dismissal of negligence claim of social host liability because intoxicated driver was contributorily negligent in *driving a vehicle* while impaired); *Shea v. Matassa*, 918 A.2d 1090, 1096–97 (Del. 2007) (refusing to recognize social host liability and stating that the consumption of alcohol is the "sole proximate cause" of injury but *not involving an intoxicated minor*); *Bland v. Scott*, 112 P.3d 941, 944–49 (Kan. 2005) (affirming the proximate cause common law rule but against the backdrop of legislative history of state statutes distinguishable from such history in Maryland pertaining to CR § 10-117(b)); *Hickingbotham v. Burke*, 662 A.2d 297, 302 (N.H. 1995) (refusing to find a civil duty in a criminal statute but not applying or discussing a test akin to Maryland's Statute or Ordinance Rule); *Canady v. McLeod*, 446 S.E.2d 879, 882 (N.C. Ct. App. 1994) (holding that the decedent's consumption of alcohol barred his claim, but not stating the decedent's age); *Ribbens v. Jawahir*, 438 N.W.2d 252, 253 (Mich. Ct. App. 1988) (refusing to extend social host liability to the serving of alcohol to *an adult*); *Williamson v. Old Brogue, Inc.*, 350 S.E.2d 621, 623 (Va. 1986) (quoting *State for Use of Joyce v. Hatfield*, 197 Md. 249 (1951) for the proposition that the drinking of alcohol is the proximate cause, not the furnishing of it); *Benevolent Protective Order of Elks Lodge #97 v. Hanover Ins. Co.*, 266 A.2d 846, 847–48 (N.H. 1970) (concluding that an insurer's policy did not exclude coverage because there was no state "dramshop act") (citation omitted).

[35] As Stapf reminds us, proximate cause is not always a jury question. *See, e.g.*, *Lashley v. Dawson*, 162 Md. 549, 562 (1932) ("It is only when the facts are undisputed, and are susceptible of but one inference, that the question is one of law for the court . . . .").

26

As we discussed, we engage here in the substantial factor inquiry that we adopted from the Restatement (Second) of Torts. *See Eagle-Picher Indus., Inc. v. Balbos*, 326 Md. 179, 208–09 (1992). The Second Restatement provides several factors that bear on the substantial factor inquiry:

> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
>
> (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces of which the actor is not responsible;
>
> (c) lapse of time.

*Pittway*, 409 Md. at 245 (quoting Section 433 of the Restatement (Second) of Torts (1965)).

Dankos alleged that Stapf came home to find more than a dozen cars on her property and a large crowd. When she requested that some people leave, the smaller group that Stapf permitted to remain proceeded to her garage. Entering the garage at least four times, Stapf observed guests, including underage persons, drinking throughout the evening. She knew that Steven and Erdman were intoxicated, and that they had driven to her home by car. Stapf later described Steven to the police as "not right, tired, like drunk." Kelsey informed Stapf of her concern that Erdman would drive despite his state of intoxication. Stapf did nothing after Kelsey raised her concern, and Stapf made no attempt to prevent

---

But here, Dankos alleged sufficient facts which, if supported by evidence admitted at trial, could justify submitting this case to the jury.

27

the intoxicated guests, including Erdman, from leaving by car. Erdman crashed his vehicle, with Steven in the truck bed, shortly after leaving Stapf's residence.

A jury, if it found these facts, could reasonably determine that Stapf, "created a force or series of forces which [we]re in continuous and active operation up to the time of the harm" to Steven. *Pittway*, 409 Md. at 245 (quoting Section 433 of the Restatement (Second) of Torts). In the words of Dankos's amended complaint, "By permitting and condoning the decedent's consumption of alcohol, Defendant Stapf prevented Steven Dankos from making an intelligent and informed decision about getting into a vehicle with a drunk driver, David Erdman, and riding in the bed of the truck." A jury could reasonably conclude that it was "more likely than not" that Stapf's conduct was a substantial factor in causing Steven's death.[36] *Pittway*, 409 Md. at 244.[37]

---

[36] Stapf insists that "had Erdman not crashed his truck that evening, [Steven] would not have sustained a fatal injury. The record suggests that if the accident had not occurred, [Steven] would have arrived home safely." The problem with this argument is that Stapf focuses entirely on Erdman's final act of driving, not on whether Stapf "created a force or series of forces which [we]re in continuous and active operation" leading up to Erdman's negligent act. *See Pittway Corp. v. Collins*, 409 Md. 218, 245 (2009) (citation omitted).

[37] Applying Pennsylvania state law, including *Congini by Congini v. Portersville Valve Co.*, 470 A.2d 515 (Pa. 1983), the Third Circuit reached a conclusion about causation similar to the one we reach today:

> There is evidence from which the jury could find that Farrell's conduct in hosting the party contributed substantially to [the minor plaintiff] Macleary's consumption of alcohol to the point of impairment. There is evidence from which the jury could find that Hines [the driver] was so obviously intoxicated that a reasonable person not impaired by alcohol, would not

28

*Legal Causation*

In this step, we examine "whether the actual harm to a litigant falls within a general field that the actor should have anticipated or expected." *Pittway*, 409 Md. at 245. In focusing on whether an actor should have anticipated or expected a harm, we concern ourselves primarily with whether the harm was foreseeable as a consequence of the actor's negligence. *Id.* at 246.

Stapf objects to imposing liability "if for example the negligence of one person is merely passive and potential, while the negligence of another is the moving and effective cause of the injury." (Quoting *Wankel v. A & B Contractors, Inc.*, 127 Md. App. 128, 159 (1999)). This passive negligence concept first appeared in *Bloom v. Good Humor Ice Cream Co. of Balt.*, 179 Md. 384 (1941). In *Bloom*, the Court concluded that an ice cream truck driver was not the proximate cause of the injuries to a ten-year-old boy who, after making a purchase from the truck parked on the street, was struck by another vehicle while returning to the sidewalk. *Id.* at 387–89. More recent cases criticized the use of passive negligence as a factor in legal causation by noting that it "overlook[s] entirely the matter of foreseeability." *Matthews v. Amberwood Assocs. Ltd. P'ship, Inc.*, 351 Md. 544, 576–80 (1998) (no error in refusing to give a proposed jury instruction on proximate cause with the passive negligence concept); *see also id.* at 577 ("Subsequent opinions of this Court have limited the 'passive' negligence language of *Bloom*, and indeed have limited the

---

have accepted a ride with [Hines]. The facts in evidence obviously permit an inference of causation.

*Macleary v. Hines*, 817 F.2d 1081, 1084 (3d Cir. 1987).

holding in that case, to the type of factual situation there involved."). No Maryland appellate decision on a proximate cause question since *Bloom* has used this passive negligence concept. *See, e.g.*, *Collins v. Li*, 176 Md. App. 502, 573–77 (2007) ("From the foregoing [discussion of *Bloom* and *Matthews*], the concept of passive negligence in an 'intervening negligent act/superseding cause' analysis is looked upon with disfavor without a consideration of the factors, relative to foreseeability."). Thus, we conclude that Stapf's legal causation argument, at least its focus, misses the mark.

Rather we inquire, in a case where there are multiple alleged negligent actors, "whether a negligent defendant is relieved from liability by intervening negligent acts or omissions." *Pittway*, 409 Md. at 247. If the intervening negligent act is unusual and extraordinary such that the original tortfeasor could not have anticipated the intervening act, then the act is a superseding cause, and the original tortfeasor may not be liable. *Id.* at 247, 249.

Taking the facts as Dankos has alleged them, we easily conclude that Erdman's act of driving drunk, and injuring Steven, both guests at Stapf's house, was foreseeable. Indeed, Stapf was told by Kelsey that she was concerned about Erdman driving after being intoxicated. Stapf knew that Steven and Erdman, among others, were drinking and became intoxicated at the party. She also knew that they had driven to the party and "could not make informed and intelligent decisions," such as how to leave the party safely. Thus, a jury could conclude that Stapf "should have anticipated or expected" the harm that befell Steven. *Pittway*, 409 Md. at 245. Dankos has alleged sufficient facts to survive the motion to dismiss.

30

**Contributory Negligence**

For the benefit of the trial court on remand, we address whether contributory negligence is an available defense in these causes of action.[38] Contributory negligence, normally a defense to negligence, is not available when a defendant violates an exceptional statute, the effect of which "is to place the entire responsibility for such harm as has occurred upon the defendant." *Brady v. Ralph M. Parsons Co.*, 327 Md. 275, 291 (1992) (quoting Restatement (Second) of Torts § 483). Comment c to Section 483 of the Second Restatement of Torts explains that "[a] statute may be found to have that purpose [of shifting responsibility] particularly where it is enacted in order to protect a certain class of persons against their own inability to protect themselves." Restatement (Second) of Torts § 483 cmt. c.; *see also* Keeton et al., *supra* at § 65, at 461–62 (same). CR § 10-117(b) clearly was enacted to protect underage people from the seductive call of alcohol and its effects. The statute was drawn carefully to limit criminal liability to a knowing and willful violation by the defendant, and we have so limited these civil causes of actions. For these reasons we conclude that negligent actions of the underage person in getting intoxicated cannot be the basis of a contributory negligence defense in an action against the person

---

[38] In Maryland, the doctrine of contributory negligence bars a plaintiff's recovery against a defendant who causes an injury where such injury is also a result of the plaintiff's own failure to exercise due care. *Coleman v. Soccer Ass'n of Columbia*, 432 Md. 679, 687 (2013). Stapf raised contributory negligence in her Answer to Dankos's amended complaint.

violating CR § 10-117(b).[39] *Cf. State Farm Mut. Auto. Ins. Co. v. Hill*, 139 Md. App. 308, 315–18 (2001) (contributory negligence does not bar recovery in an action involving an intentional tort); Restatement (Second) of Torts § 483.

In sum, Dankos may maintain her negligence claim arising out of CR § 10-117(b) against Stapf past the motion to dismiss stage. We are mindful of Stapf's argument that this case presents "a matter of public concern that is best left to the General Assembly of Maryland to decide." Our courts have nodded to the General Assembly when confronted with questions of whether to recognize common law claims of social host or licensee liability. *Warr*, 433 Md. at 199; *Felder v. Butler*, 292 Md. 174, 183–84 (1981); *Hatfield*, 197 Md. at 256. But as we have discussed, what distinguishes Dankos's claim is the statute the General Assembly passed and in which we identify a civil duty, CR § 10-117(b). Indeed, it is from this statute that we also identify a legislative recognition that minors such as Steven have a reduced ability to handle alcohol. As such, we refuse to construe a minor's decision to consume alcohol voluntarily as the proximate cause of his injuries. Because our analysis tracks CR § 10-117(b) closely, we do not consider our decision an intrusion into the General Assembly's arena.

---

[39] We do not foreclose a contributory negligence defense asserted by a third party (non-social host) in litigation against the intoxicated underage person, or vice versa, or one asserted by the violating adult against a third party.

32

## Case No. 20: Kiriakos

## Common Law Duty

We granted Kiriakos's Petition for Writ of Certiorari to address the following questions:

1. Assuming a duty existed, whether the acts of Phillips establish a prima facie claim of negligence under fundamental tort principles?

2. Whether Maryland should recognize a narrowly tailored definition of social host liability when an adult directly provides massive amounts of alcohol to a teenager when the adult knows the teenager will soon drive?

Because we answer yes to both questions, we shall reverse.

Kiriakos sues in common law negligence, asking us to apply "traditional negligence principles," and engage in an ordinary duty of care analysis. While acknowledging Maryland has not recognized social host liability to third persons, Kiriakos points to legislation in the State "protecting minors and the public from the effects of alcohol." At oral argument she pointed to CR § 10-117 as a statement of that policy. Focusing on Phillips's active and knowing misconduct, providing alcohol to an underage person, she sees no need to establish a special relationship with Phillips to support her claim of duty. Distinguishing earlier Maryland cases, Kiriakos sees her action as closer to the theory of negligent entrustment.

Countering, Phillips avows: "labeling a theory that is *clearly* social host liability by a different name is still social host liability." (Emphasis in original.) Relying on two

decisions by the Court of Special Appeals,[40] he proclaims Maryland social host liability cases are dispositive in his favor. Likewise, he views our reasoning in *Warr v. JMGM Group, LLC*, 433 Md. 170 (2013) as foreclosing Kiriakos's cause of action. Like *Warr*, Phillips maintains that the proper inquiry is whether he had a special relationship with Robinson that created a duty to control the latter's actions, to which he answers, resoundingly, no.

*CR § 10-117(b)*

We certainly do not overlook or discount our recent decision in *Warr*. What critically distinguishes Kiriakos's claim from the plaintiffs' in *Warr,* however, is Robinson's age and the venue of his intoxication, both reflected in the strong public policy underlying CR § 10-117(b).[41] This statute, which prohibits adults from allowing underage drinking on their property, represents the General Assembly's determination that underage persons have a diminished ability to handle alcohol and adults should not facilitate minors' consumption in the adult's homes, save the narrow exceptions in the statute. *See* CR § 10-117(b); *see also Martin v. Marciano*, 871 A.2d 911, 916 (R.I. 2005) ("These statutes demonstrate an overriding policy against not only underage drinking, but also an adult's provision of alcohol to minors, who, by virtue of their tender age and inexperience, are presumed less capable of handling the deleterious effects of alcohol consumption."). Thus,

---

[40] *Hebb v. Walker*, 73 Md. App. 655, 661 (1988) and *Wright v. Sue & Charles, Inc.* 131 Md. App. 466, 478 (2000).

[41] Kiriakos emphasized the public policy underlying CR § 10-117 at oral argument in explicating her negligence argument to the Court.

just as we did with Dankos, we view underage persons as vulnerable and with diminished

ability [42] in the context of drinking alcohol on an adult's property.[43]

Unlike the statute allegedly violated in *Warr*, an adult only violates CR § 10-117(b),

if he "knowingly and willfully allow[s]"[44] an underage person to possess or consume

---

[42] *See State for Use of Joyce v. Hatfield*, 197 Md. 249, 254 (1951) (explaining that a seller of alcohol is not liable for the injuries a patron may cause as a result of his intoxication because the patron is responsible for his own torts). We discuss *Hatfield* in more detail *infra*.

[43] Some courts have refused to impose a duty on social hosts based on public policy reasons. *See, e.g.*, *Ferreira v. Strack*, 652 A.2d 965, 968 (R.I. 1995) ("The imposition of liability upon social hosts for the torts of guests has such serious implications that any action taken should be taken by the Legislature after careful investigation, scrutiny, and debate."); *see also* Restatement (Third) of Torts § 7 cmt. a (2010) ("[I]n some categories of cases, reasons of principle or policy dictate that liability should not be imposed."). Such a course of action is not appropriate in this context because we have identified sufficient public policy reasons in an existing statute, CR § 10-117, that criminalizes knowingly and intentionally permitting underage drinking by adults on their property.

Although several jurisdictions have rejected negligence claims involving underage drinking and driving, those jurisdictions did not discuss any statute like CR § 10-117(b), which imposes responsibility on adults for the conduct on their property of underage persons vis-à-vis alcohol. *See, e.g.*, *Robinson v. Matt Mary Moran, Inc.*, 525 S.E.2d 559, 561, 563 (Va. 2000) (discussing only statutes prohibiting the sale of alcohol to intoxicated persons and persons under 21); *Martin v. Watts*, 513 So. 2d 958, 963 (Ala. 1987) (discussing statute prohibiting the disposition of alcohol contrary to law). Phillips's reliance on other out-of-state decisions is also unpersuasive. *See Farmers & Mech. Mut. Fire Ins. Co. of West Va. v. Hutzler*, 447 S.E.2d 22, 24–25 (W. Va. 1994) (recognizing that the relevant statute was inapplicable to the appellants—owners of property where alcohol was served—because the statute only applied to sellers of alcohol); *see also Chokwak v. Worley*, 912 P.2d 1248, 1250–54 (Alaska 1996) (granting immunity to social hosts because the statute so required).

[44] Although the mens rea of "knowing" is susceptible of several meanings, *see State v. McCallum*, 321 Md. 451, 458 (1991) ("There is more than one mental state that may constitute 'knowledge.'") (Chasanow, J., concurring), we need not define its contours today because the pleadings suggest Phillips himself gave Robinson alcohol on his property with knowledge that Robinson was underage. *See McCallum*, 321 Md. at 458 ("The first

35

alcohol at his home.  CR § 10-117(b).  Because we rely heavily on the public policy set forth in CR § 10-117(b), we view this knowing and willful standard as a predicate for the limited social host cause of action we evaluate today.  *See Marcum v. Bowden*, 643 S.E.2d 85, 86 (S.C. 2007) ("An adult social host who knowingly and intentionally serves, or causes to be served, an alcoholic beverage to a person he knows or reasonably should know is between the ages of 18 and 20 is liable to the person served and to any other person for damages proximately resulting from the host's service of alcohol.").[45]

---

and highest form of 'knowledge' is actual knowledge, that is, an actual awareness or an actual belief that a fact exists.").

We discussed the meaning of "willful" at length in *Deibler v. State*, 365 Md. 185, 195 (2001), in which we explained that "[m]ost [] interpretations [of willful], although not all, have . . . requir[ed] only that the act be committed intentionally, rather than through inadvertence."  In the absence of any statutory definition for "willful," we will apply, as did the *Deibler* Court, this most common interpretation.  *E.g.*, *Chen v. State*, 370 Md. 99, 113–14 (2002).

[45] To be clear, CR § 10-117(b) guides our determination that the adult is responsible for the underage person's drinking on the adult's property, and the duty to Kiriakos flows in large part from this provision of the statute.  But Phillips's alleged conduct also violates CR § 10-117(a), which states that:

> a person may not furnish an alcoholic beverage to an individual if:
>> (1) the person furnishing the alcoholic beverage knows that the individual is under the age of 21 years; and
>> (2) the alcoholic beverage is furnished for the purpose of consumption by the individual under the age of 21 years.

CR § 10-117(a).  Whether an alleged violation of this provision alone could constitute a duty to a third party is a matter this Court need not decide today.

Admittedly, the terms "knowing" and "willful" are not usually paired with negligence. But nothing prevents us from superimposing this requirement on a cause of action for social host liability sounding in negligence where an integral statute on which the negligence depends makes knowledge and willfulness pivotal for culpability. *See Ghassemieh v. Schafer*, 52 Md. App. 31, 40 (1982) (noting that "the presence of an intent to do an act does not preclude negligence" in a case involving the prank of yanking a chair out from under a person about to sit); Keeton et al., *supra* at § 34, at 212–13. Professor Keeton explains:

> Lying between intent to do harm, which . . . includes proceeding with knowledge that the harm is substantially certain to occur, and the mere unreasonable risk of harm to another involved in ordinary negligence, there is a penumbra of what has been called "quasi-intent." To this area the words "willful," "wanton," or "reckless," are customarily applied; and sometimes, in a single sentence, all three . . . . [T]he three terms have been treated as meaning the same thing, or at least as coming out at the same legal exit. They have been grouped together as an aggravated form of negligence, differing in quality rather than in degree from ordinary lack of care. . . . . They apply to conduct which is still, at essence, negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if it were so intended.

Keeton et al., *supra* at § 34, at 212–13 (footnotes omitted). Bearing in mind this "knowing and willful" requirement, we now turn to traditional negligence law to examine the basis from which social host liability to a third party can be formulated.

37

*Negligent Entrustment*

The doctrine of negligent entrustment, advanced by Kiriakos,[46] is instructive as to whether Phillips owes Kiriakos, a third party, a duty when he enabled an underage person to consume alcohol on his property, drive away under the influence, and ultimately injure Kiriakos near a public motorway. We first applied the theory of negligent entrustment in *Rounds v. Phillips*, 166 Md. 151, 160–61 (1934). In *Rounds*, William Phillips negligently drove his parents' car and crashed into a truck Rounds was driving. *Id.* at 157–58. Ruling for the plaintiff, a third party, the Court reasoned that sufficient evidence showed that Phillips's parents permitted him to drive their car even though they knew or should have known he was an incompetent driver. *Id.* at 166–67, 169.

The *Rounds* Court quoted Section 390 of the Restatement (First) of Torts (1934) to describe the tort of negligent entrustment as follows:

> **One who supplies** directly or through a third person **a chattel for the use of another whom the supplier knows or from facts known to him, should know to be likely because of his youth,** inexperience, or otherwise, **to use it in a manner involving unreasonable risk of bodily harm to himself and others** whom the supplier should expect to share in, or be in the vicinity of its use, **is subject to liability for bodily harm** caused thereby to them.

---

[46] Ignoring Kiriakos's discussion of negligent entrustment, Phillips emphasizes that the *Warr* Court framed its common law duty analysis as follows: "We have consistently recognized that, in the absence of control or a special relationship, there can be no duty to an injured person for harm caused by a third party." (Quoting *Warr*, 433 Md. at 189.) The doctrine of negligent entrustment was not discussed in *Warr*, probably because the Warrs did not rely on this theory in arguing that the tavern owners were responsible for their injuries. *Compare Warr*, 433 Md. at 178–99, *with* Brief for William J. Warr, *Warr v. JMGM Group, LLC*, 433 Md. 170 (2013) (No. 57), *and* Reply Brief for William J. Warr at 2–15, *Warr v. JMGM Group, LLC*, 433 Md. 170 (2013) (No. 57).

*Id.* at 160–61 (emphasis added.)  Discussing an analogy to a tort based on an "inherently

dangerous instrumentality," the *Rounds* Court reasoned:

> There is . . . a logical analogy when a potentially dangerous
> instrumentality is put into the hands of a reckless and
> incompetent operator, to be used in proximity to the traveling
> public.  In other words, there is no analogy when the owner of
> an automobile permits it to be used by one not known to be
> incompetent and reckless, because under such conditions it is
> not inherently dangerous; while on the other hand, if he loans
> his automobile to another who is known to the owner to be
> habitually reckless and operate an automobile under the
> influence of liquor, under such conditions the automobile, plus
> the incompetency of the person to whom it is entrusted, does
> create an inherently dangerous instrumentality.

*Id.* at 163.  *Rounds* illustrates that negligent entrustment involves a duty to a third person—

someone injured by the reckless driver.  Citing *Remsburg v. Montgomery*, 376 Md. 568

(2003) and other cases, Phillips argues that we could only find him liable to a third party if

there exists a special relationship between Phillips and Robinson or between Phillips and

Kiriakos—such that Phillips had a duty to control Robinson's conduct.[47]  But *Rounds*

shows that special relationships are not the exclusive means to justify imposition of duty

to a third person.

---

[47] The notion of a duty to control the conduct of a third person, when there is a
special relationship between the defendant and a third person or between the defendant and
the plaintiff, is discussed in Restatement (Second) of Torts § 315.  *See Barclay v. Briscoe*,
427 Md. 270, 294–95 (2012); *see also id.* at 294 n.14 (mentioning Sections 316–19 of the
Restatement (Second) of Torts as setting forth examples of such special relationships, e.g.,
parent and child under certain circumstances).

Other courts have recognized a similarity between negligent entrustment of a car to a youth, as in *Rounds*,[48] and the alleged circumstances before us, that is, allowing an underage person, who is likely to drive, to consume alcohol. In *Estate of Hernandez by Hernandez-Wheeler v. Arizona Board of Regents*, 866 P.2d 1330, 1333 (Ariz. 1994), an underage fraternity member drove from a fraternity party where he had been drinking and caused severe injuries to another driver. The injured driver sued various defendants, including the fraternity and certain members. *Id.* The Supreme Court of Arizona concluded that furnishing alcohol to underage consumers "violates well-established common-law principles that recognize a duty to avoid furnishing dangerous items to those known to have diminished capacity to use them safely." *Id.* at 1342. One such principle was negligent entrustment. *Id.* at 1340. After analyzing cases applying this and similar common law principles, the court stated: "**We perceive little difference in principle between liability for giving a car to an intoxicated youth and liability for giving drinks to a youth with a car**." *Id.* (emphasis added.) The point, the court emphasized, was not whether the item given a youth is "a loaded gun, a car, or alcohol," but that the item is dangerous, and that the item is given to a "recipient [who] is known to be incompetent to receive [it]." *Id.* at 1340–41. *See also Huston v. Konieczny*, 556 N.E.2d 505, 509 (Ohio 1990) (finding relevant, in claim arising from a drunk driving accident, that "[p]arents may

---

[48] The only other Maryland case we found involving liability based on negligent entrustment is *Kahlenberg v. Goldstein*, 290 Md. 477, 484–94 (1981) (holding that a father was not entitled to a directed verdict in a negligent entrustment case where there was sufficient evidence for the jury to find that he gave a car to his minor son, whom the father knew to be a reckless and negligent driver).

incur liability when they negligently entrust their child with an instrumentality (such as a gun or car) which, because of the child's immaturity or lack of experience, may become a source of danger to others").

The doctrinal underpinnings of negligent entrustment are also subsumed within a broader tort theory that is set forth in the Restatement (Third) of Torts § 19. Although we need not adopt Section 19, we find it helpful to illustrate how the theory of negligent entrustment provides a foundation for recognizing the tort of social host liability in the present case. In both the doctrine of negligent entrustment and Section 19, the adult increases the risk of harm to themselves and others by facilitating the improper conduct of another.

Section 19 of the Restatement (Third) of Torts instructs that "[t]he conduct of a defendant can lack reasonable care insofar as it foreseeably combines with or permits the improper conduct of the plaintiff or a third party." Restatement (Third) of Torts § 19 (2010).[49] Comment e describes pertinent cases as those "in which the defendant's conduct creates or increases the probability of harm caused by third-party misconduct." *Id.* § 19

---

[49] The Restatement provides that "[t]his Section [§ 19] is to a large extent a special case of § 3, and findings of defendant negligence under this Section hence largely depend upon consideration of the primary negligence factors set forth in § 3." Restatement (Third) of Torts § 19 cmt. d. Section 3, "Negligence," states that [a] "person acts negligently if the person does not exercise reasonable care under all the circumstances." *Id.* § 3. Thus, we will discuss classic negligence factors such as foreseeability *infra* before making an ultimate determination about whether Phillips may be liable for the conduct he engaged in.

41

cmt. e. The illustrations in Section 19 include a classic example of negligent entrustment.[50]

They also include providing a child with access to a dangerous instrument, such as a gun.[51]

Restatement (Third) of Torts § 19 cmt. e, illus. 3. And like the doctrine of negligent

entrustment, Section 19 imposes no requirement of a special relationship or control of

another's conduct.[52]

But, Phillips argues, he cannot owe a duty to Kiriakos based on the concept of

creating a risk because the Court in *Warr* disposed of such a theory. He points us to that

portion of the *Warr* opinion in which the Court examined *Barclay v. Briscoe*, 427 Md. 270

(2012). The reasoning in *Barclay*, which the Court in *Warr* approved, derived in part from

---

[50] The first illustration states:

> Judy loans her car for the evening to her friend, Grant, who
> needs the car for social purposes. Judy knows that Grant's
> driver's license was suspended a month previously on account
> of repeated instances of reckless driving. In the course of the
> evening, Grant drives the car negligently, and injures Eugene,
> a pedestrian. A jury can find that Judy was negligent in loaning
> or entrusting her car to Grant.

Restatement (Third) of Torts § 19 cmt. e, illus. 1. The illustration closely resembles the
circumstances in *Rounds v. Phillips*, 166 Md. 151, 153–54 (1934), in which Phillips was
convicted of speeding, reckless driving, and driving under the influence of alcohol before
his parents entrusted him with their car.

[51] *See also* Restatement (Second) of Torts § 390 cmt. b, illus. 1 (providing gun to
young girl).

[52] *See also Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 362–63 (2008)
(noting that "conduct creating risk to another" can establish a duty) (quoting Restatement
(Third) of Torts § 37 Reporters' Note cmt. c).

42

*Hatfield*. *See Warr*, 433 Md. at 185 n.11.[53]  As Phillips reasons, the application of *Hatfield*

to the circumstances in *Barclay* and *Warr* respectively is that an employee who works until

exhaustion and drives, or a patron who drinks and drives, is "responsible for his or her own

torts." *See Warr*, 433 Md. at 185 n.11.  Yet, unlike this case, *Barclay* involved an adult

who chose to drive after working multiple shifts, was allegedly incapacitated by fatigue,

and caused an accident.  There is no Maryland statute recognizing a state problem with

injuries caused by persons driving while overly fatigued and forbidding multiple shifts.[54]

*Cf.* CR § 10-117(b) (reflecting state policy relating to alcohol and underage minors).  We

cannot emphasize enough that a minor's decision to drink is not the same as an adult's.

Neither are we persuaded by Phillips's assertion that "[s]erving alcohol to another,

even if the other one is 18 years old like Robinson, does not in and of itself guarantee that

an injury or death will occur."  Of course, there is no guarantee of injury or death.  But tort

---

[53] As indicated earlier, the Court in *Hatfield*, 197 Md. at 255, held that tavern owners were not liable for injuries to a motorist caused by another motorist who became intoxicated at their establishment because of the common law rule that "the man who drank the liquor [was] liable" and "the act of selling [liquor was] too remote to be a proximate cause of an injury caused by the negligent act of the purchaser of the drink."  (Citation and internal quotation marks omitted).

[54] In *Barclay v. Briscoe*, 427 Md. at 292, the Court analyzed whether an employer was liable for injuries arising out of a car accident, specifically, whether the employer was negligent "in failing to prevent the risk that a fatigued employee posed to the general motoring public."  In the absence of any applicable Maryland statutes, the *Barclay* Court wisely noted that it is the prerogative of the General Assembly, not the courts, to evaluate and make public policy decisions.  *See id.* at 307 ("Insofar as Petitioners are maintaining that we should abandon long-standing principles, and use this case to fashion some type of judicially-imposed maximum working hours standard across all industries, we unequivocally decline to do so.") (citing *Grady v. Unsatisfied Claim & Judgment Fund Bd.*, 259 Md. 501, 505 (1970)) ("The question of [creating] social policy . . . is peculiarly appropriate for legislative, not judicial, determination.").

law deals with risks, not certain outcomes.  Keeton et al., *supra* at § 31, at 169 ("Negligence is a matter of risk—that is to say, of recognizable danger of injury.  It has been defined as 'conduct which involves an unreasonably great risk of causing damage,' or, more fully, conduct 'which falls below the standard established by law for the protection of others against unreasonable risk of harm.'").  Enabling an underage person to drink alcohol under these circumstances increases the risk of harm, which undergirds the tort of negligent entrustment.  *See Estate of Hernandez by Hernandez-Wheeler*, 866 P.2d at 1340–41 ("If the recipient is known to be incompetent to receive the dangerous instrument, it is irrelevant whether it is a loaded gun, a car, or alcohol."); Dan B. Dobbs et al., The Law of Torts § 424, at 776 (2d ed. 2011) ("[T]he injured stranger is not a participant in the intoxication, only a victim, and for that reason might seem especially worthy of protection from the host's negligence."); Nat'l Inst. on Alcohol Abuse and Alcoholism, Underage Drinking: Fact Sheet at 1 (2016), *available at* http://pubs.niaaa.nih.gov/publications /UnderageDrinking/Underage_Fact.pdf [https://perma.cc/UT66-KNEJ] ("Alcohol is the most widely used substance of abuse among America's youth, and drinking by young people poses enormous health and safety risks.").

For the reasons stated above, we conclude that Kiriakos can maintain a limited social host cause of action against Phillips through common law tort principles, like negligent entrustment, based on the strong public policy evident in CR § 10-117(b).  To the extent that the Court of Special Appeals decisions in *Hebb* or *Wright* are inconsistent with this conclusion, we overrule them.

Our decision is consonant with the classic factors we use to decide questions of duty under the common law:

> the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise reasonable care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*Ashburn v. Anne Arundel Cnty.*, 306 Md. 617, 627 (1986) (citation omitted).[55] *Cf. Eisel v. Bd. of Educ. of Montgomery Cnty.*, 324 Md. 376, 386–94 (1991) (recognizing a common law duty where legislation substantially influenced the multi-factor analysis). Although foreseeability is perhaps "most important" among these factors, it alone does not justify the imposition of a duty. *Ashburn*, 306 Md. at 628. Performing our due diligence, we discuss each factor and address some of Phillips' arguments in that context.

### (i)     Foreseeability of Harm

According to recent legislative history relating to CR § 10-117(b), the risk of harm that drunk drivers pose to the general public is obvious. H.B. 299, Fiscal & Policy Note, 2009 Reg. Sess., at 5 ("According to the U.S. Department of Transportation, alcohol-impaired driving is one of the nation's deadliest crimes."). This history also shows that underage drunk driving poses an equal if not greater public threat. *See id.* (explaining that,

---

[55] *See* Restatement (Third) of Torts § 37 cmt. d ("[When] the actor's conduct creates risks of its own[, it] is governed by the ordinary duty of reasonable care contained in § 7. Section 19 specifically addresses the duty of reasonable care when an actor's conduct increases the risk of third-party conduct that causes harm.").

among all fatally injured alcohol-impaired drivers, the percentage of such drivers aged 16 to 20 "has hovered around 25%" since 1995).

It is alleged that Phillips served Robinson alcohol, enough so that Phillips had two conversations with him about the extent of his drinking.[56] Phillips knew that Robinson, who had driven to Phillips's house, likely was going to be driving after their get-together, especially when Robinson declined an invitation to stay at Phillips's house. Robinson left about an hour after refusing the invitation, and the accident occurred another hour later. Robinson struck Kiriakos, a pedestrian, while driving under the influence. The officer at the scene smelled "a strong odor" of alcohol on Robinson's breath and "noticed that his eyes were bloodshot." Robinson's blood alcohol content measured at .088.[57]

Based on these allegations, and the universally understood risk of harm that underage drunk driving poses to the traveling public, Kiriakos's injuries were foreseeable. We disagree with Phillips that it is a "leap" to make this conclusion.

*(ii)     Degree of Certainty that the Plaintiff Suffered the Injury*

Robinson pleaded guilty to "causing life-threatening injuries to" Kiriakos because he drove under the influence, and he reiterated in his deposition that his actions caused her injuries. This factor favors civil liability.

---

[56] The record reveals no specific evidence of the quantity of alcohol Robinson consumed.

[57] *Cf.* Courts and Judicial Proceedings Article (1973, 2013 Repl. Vol.), § 10-307(g) ("If at the time of testing a person has an alcohol concentration of 0.08 or more, as determined by an analysis of the person's blood or breath, the person shall be considered under the influence of alcohol per se as defined in § 11-174.1 of the Transportation Article.").

### (iii) Closeness of the Connection Between Defendant's Conduct and the Injury Suffered

This factor is like a "proximate cause element" in that "[c]onsideration is given to whether, across the universe of cases of the type presented, there would ordinarily be so little connection between breach of the duty contended for, and the allegedly resulting harm, that a court would simply foreclose liability by holding that there is no duty." *Eisel*, 324 Md. at 389. *Hatfield*, 197 Md. at 254, established a long-standing rule that the "law (apart from statute) recognizes no relation of proximate cause between a sale of liquor and a tort committed by a buyer who has drunk the liquor" because people, "drunk or sober, are responsible for their own torts." But this rule does not extend to the circumstances here—an underage person consuming alcohol on the adult's property with the adult's complicity. Considering the legislative recognition in Maryland that underage people have a diminished ability to handle alcohol and may expose themselves and others to harm, there is a sufficient connection between Phillips's conduct and the harm to Kiriakos such that we will not foreclose liability.

The nature of the risk at issue is also relevant here. We explained in *Jacques v. First National Bank of Maryland*, 307 Md. 527, 537 (1986) that, "[a]s the magnitude of the risk increases, the requirement of privity is relaxed—thus justifying the imposition of a duty in favor of a large class of persons where the risk is of death or personal injury." Here, where the risk is death or personal injury, a close connection between Phillips and Kiriakos is not required. This factor favors civil liability.

47

### (iv) Moral Blame Attached to the Defendant's Conduct

Under this factor, our standard is not evidence of "intent to cause harm." *Eisel*, 324 Md. at 390. Rather, we consider "the reaction of persons in general to the circumstances." *Id.* at 390–91.

In *Eisel*, the Court considered whether to impose a duty on school counselors "to attempt to prevent an adolescent's suicide, by reasonable means, including, in [that] case, by warning the parent."[58] *Id.* at 385. In holding that the counselors had such a duty, the Court explained that legislation requiring "youth suicide prevention programs" to raise awareness about "emotional warning signs" showed "a community sense that there should be intervention based on emotional indicia of suicide." *Id.* at 391, 393.

Here, the General Assembly has created law to hold *adults responsible* for underage drinking on their property because of the risks associated with underage drinking. *See* CR § 10-117(b). We underscore that what is blameworthy here is not merely that an underage person drinks alcohol on an adult's property, but that, as stated in CR § 10-117(b), the adult "*knowingly and willfully* allow[s] an individual under the age of 21 years actually to possess or consume an alcoholic beverage at [the adult's] residence, or within the curtilage" thereof. CR § 10-117(b) (emphasis added).

---

[58] Two school counselors had confronted a student about statements of an intent to kill herself. *Eisel v. Bd. of Educ. of Montgomery Cnty.*, 324 Md. 376, 380 (1991). Although the student denied making such statements, she subsequently killed herself in a murder-suicide pact with another person. *Id.* The counselors did not tell the student's parents or the school about her alleged statements before she died. *Id.*

Because Phillips allegedly not only permitted but facilitated Robinson's drinking on his property to the point of intoxication, we conclude that the general public would consider Phillips's conduct blameworthy. Again, this factor favors liability.

*(v)      The Policy of Preventing Future Harm*

As we noted in *Matthews v. Amberwood Associates Ltd. Partnership, Inc.*, 351 Md. 544, 570 (1998):

> The 'prophylactic' factor of preventing future harm has been quite important in the field of torts. The courts are concerned not only with the compensation of the victim, but with admonition of the wrongdoer. When the decisions of the courts become known, and defendants realize that they may be held liable, there is of course a strong incentive to prevent the occurrence of the harm. Not infrequently one reason for imposing liability is the deliberate purpose of providing that incentive.

(Quoting Keeton et al., *supra* at § 4, at 25–26).

Examining this factor in *Eisel*, 324 Md. at 387, we noted that pertinent legislation "made it quite clear that prevention of youth suicide is an important public policy, and that local schools should be at the forefront of the prevention effort." We concluded that a duty "to prevent suicides when [school counselors] have evidence of a suicidal intent comports with the policy underlying this Act." *Id.* at 389.

The General Assembly's decision to punish adults who furnish alcohol to underage persons or otherwise tolerate it, occurred in the wake of a report to combat drunk driving, and statistics attesting to the pervasive dangers of drunk driving. It is transparent that this legislative action and the impetus for it provide a "strong incentive to prevent the occurrence of the harm" that befell a victim like Kiriakos. *See Mathews*, 351 Md. at 570

49

(quoting Keeton et al., *supra* at § 4, at 25–26); *cf.* CR § 10-121(b).  Consideration of this policy thus favors liability.

*(vi)  Extent of the Burden on the Defendant and Consequences to the Community of Imposing a Duty*

In *Eisel,* the Court concluded that the risk of harm greatly outweighed the extent of the burden to the defendant.  *See Eisel,* 324 Md. at 391–92.  "[T]he consequence of the risk [of teenage suicide] is so great that even a relatively remote possibility of a suicide may be enough to establish duty."  *Id.* at 391.  The consequences of underage drinking are great— such that the burden on Phillips of denying youths access to alcohol hardly warrants discussion.[59]

The conduct at issue in *Warr,* 433 Md. at 175, provides an instructive contrast.  The allegations in *Warr* were that the tavern served alcohol to an adult who was "visibly intoxicated," an act prohibited by law.  The point at which a patron becomes "visibly intoxicated" is a point about which reasonable minds could differ.  When an underage

---

[59] The Supreme Court of Tennessee took a similar no-tolerance approach with respect to illegal conduct also involving an adult host and drinking by underage guests:

> Given that underage drinking is illegal, we have little difficulty in concluding that there is minimal social utility, if any, in providing a forum for teenagers to consume alcohol.  [The adult host] argues that "kids that chose to drink would find a way to do so," and that he should not be penalized for permitting them to do what they would inevitably do regardless of his wishes.  We strongly disagree.  Our view is that even if that conduct were inevitable, it must not be condoned or encouraged.

*Biscan v. Brown,* 160 S.W.3d 462, 482 (Tenn. 2005).

50

person such as Robinson steps foot on Phillips's property, however, reasonable minds cannot differ as to what Phillips must do in light of CR § 10-117. Phillips cannot allow Robinson, a person he knew to be underage, to drink on his property. This prohibition serves as a bright line.[60] The burden on Phillips was not great—he could have easily conformed his conduct to the law by refraining from furnishing alcohol to Robinson.

This factor also favors imposition of liability.

### (vii) Cost and Prevalence of Insurance for the Risk Involved

Kiriakos avers that "[t]here is affordable insurance, available to every homeowner or renter, which would protect a defendant's personal assets in the event the defendant injured a third party by serving alcohol to an underage person." But Kiriakos does not point to any evidence in the record to support her assertion. In the absence of such information, will not address the seventh factor.

Reviewing the six favorable factors, we deduce that this seven-pronged test supports our conclusion that a cognizable duty was adequately alleged.

## Proximate Cause

Our two-step inquiry in determining proximate cause is whether Phillips's negligence was a "1) a cause in fact, and 2) a legally cognizable cause" of Kiriakos's

---

[60] We disagree with Phillips that Kiriakos's argument "creates a blanket of unanswered questions," such as the question "what constitutes 'large amounts of alcohol.'" Phillips was never allowed to serve any alcohol to Robinson on his property. *See* CR § 10-117; *see also Martin v. Marciano*, 871 A.2d 911, 916 (R.I. 2005) ("To avoid assuming a duty of protection, the adult property owner must simply comply with existing law and refuse to provide alcohol or condone underage drinking on his or her property.").

injuries. *Pittway Corp. v. Collins*, 409 Md. 218, 243–46 (2009). Phillips focuses his proximate cause argument on the second prong—legal causation.

Phillips contends that Kiriakos cannot establish proximate cause because the critical event was Robinson's decision to drink. He avers that "responsibility rests on the individual who chooses to drink." (Quoting *Wright*, 131 Md. App. at 476 (discussing *Hatfield*)). This plows already plowed ground. As we have said CR § 10-117(b) allocates legal responsibility to the adult who permits an underage person to drink alcohol on an adult's property.[61] Suffice it to say that Robinson's decision to drink does not disrupt the causal chain and thereby destroy Kiriakos's claim against Phillips. *See, e.g.*, *Ely v. Murphy*, 540 A.2d 54, 58 (Conn. 1988) ("[L]ogic dictates that their [minors'] consumption of alcohol does not, as a matter of law, constitute the intervening act necessary to break the chain of proximate causation and does not, as a matter of law, insulate one who provides alcohol to minors from liability for ensuing injury.").

*Causation-in-Fact*

As we earlier discussed, when an injury arises from "two or more independent negligent acts," as it does here, we apply the substantial factor test. *Pittway*, 409 at 244. That is, we must determine whether "it is 'more likely than not' that the defendant's

---

[61] With respect to Robinson's age, Phillips says that he "may be considered a 'minor' in reference to drinking alcohol," but that Robinson "was adult of age" because he could, among other things, marry and vote. The General Assembly, in enacting CR § 10-117, did not address rights and privileges available and unavailable to Robinson. Neither shall we.

conduct was a substantial factor in producing the injuries." *Id.* We earlier discussed the criteria for a substantial factor inquiry. *See* Restatement (Second) of Torts *supra*.

The police officer concluded that Robinson's "blood alcohol level and lack of sleep caused him to not be able to control his vehicle in a safe manner." Robinson began drinking around eight hours earlier when Phillips provided vodka and champagne.[62] Phillips admitted Robinson "dr[a]nk a little too much" and was concerned about him driving home. These facts, if proven, could lead a reasonable jury to conclude that Phillips's provision of alcohol to Robinson "created a force or series of forces which [we]re in continuous and active operation up to the time" Robinson injured Kiriakos. *Pittway*, 409 Md. at 245 (quoting Section 433 of the Restatement (Second) of Torts). Thus, a jury could conclude that "it is 'more likely than not'" that Phillips's conduct was a substantial factor in producing Kiriakos's injuries. *Id.* at 244.

### *Legal Causation*

Legal causation is an inquiry into "whether the actual harm to a litigant falls within a general field of danger that the actor should have anticipated or expected." *Pittway*, 409 Md. at 245. We, then, are primarily concerned with whether the harm to Kiriakos was foreseeable by Phillips. *Id.* at 246. This analysis overlaps with our inquiry into duty, *supra*, in which we concluded that the harm to Kiriakos from Phillips's conduct was foreseeable.

---

[62] There is no contention that Robinson was drinking alcohol before the get-together; indeed, Robinson was in Phillips's company for nearly five hours working on their music before they began drinking.

Here, there are multiple instances of alleged negligent conduct, including Robinson's negligence in driving under the influence. Our inquiry then is "whether a negligent defendant is relieved from liability by intervening negligent acts or omissions." *Id.* at 247. If Robinson's intervening negligent act is unusual and extraordinary such that Phillips "could not have anticipated" the intervening act, then the act is a superseding cause, and Phillips, as the original tortfeasor, may not be liable. *Id.* at 247, 249.[63] That is a jury question. *See Balt. Gas & Elec. Co. v. Lane*, 338 Md. 34, 52–53 (1995) ("This foreseeability inquiry [on the issue of intervening-superseding causation] is ordinarily a question of fact to be decided by the finder of fact.") (citation omitted), *overruled on other grounds by Balt. Gas & Elec. Co. v. Flippo*, 348 Md. 680 (1998).

If the evidence supported the allegations, a reasonable jury could conclude: (1) Kiriakos's injuries were a result of Robinson's drunk driving; (2) Phillips could have anticipated Robinson's negligent act because both Robinson's substantial consumption of alcohol and the likelihood of his driving were apparent to Phillips; and (3) the accident occurred within an hour after Robinson left Phillips's house. These conclusions, if made by the jury, would render Phillips's conduct a legal cause of Kiriakos's injuries.[64]

---

[63] The intervening-superseding act inquiry renders beside the point Phillips's argument that "Robinson, not [] Phillips, got behind the wheel of his motor vehicle and struck [Kiriakos]." The original tortfeasor does not avoid liability just because a subsequent negligent event occurs. Phillips does not explain why Robinson's negligent act of driving (under the influence) was unusual or extraordinary.

[64] On quite similar facts, the Superior Court of New Jersey, Appellate Division explained:

Subject to exceptions noted in the statute, adults are responsible criminally for underage drinking on their property. CR § 10-117. Depending on the circumstances, an adult who violates this statute may owe a civil duty to persons injured as a result of such drinking, including the underage persons consuming the alcohol. Phillips owed Kiriakos such a duty, as Stapf had a duty with respect to Dankos. The Circuit Court erred in granting the defendants' motions.

Although the reasoning differs in the two cases, the public policy underlying CR § 10-117(b) applies to both cases. That is, underage persons are not solely responsible for drinking alcohol on an adult's property because they are not competent to handle the effects of this potentially dangerous substance. Because of the public policy evident in CR § 10-117(b), Stapf and Phillips cannot avail themselves of the adage in *Hatfield* that a person's decision to drink is the sole cause of injuries arising from his intoxication. *See Hatfield*, 197 Md. at 254.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE**

---

[A] jury might well determine that a social host who serves excessive amounts of alcoholic beverages to a visibly intoxicated minor, knowing the minor was about to drive a car on the public highways, could reasonably foresee or anticipate an accident or injury as a reasonably foreseeable consequence of his negligence in serving the minor. This becomes devastatingly apparent in view of the ever-increasing incidence of serious automobile accidents resulting from drunken driving.

*Linn v. Rand*, 356 A.2d 15, 19 (N.J. Super. Ct. App. Div. 1976).

**NO. 55 REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT OF HOWARD COUNTY, AND TO REMAND TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE NO. 20 REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT OF BALTIMORE COUNTY, AND TO REMAND TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**