*Homer Walton, et al. v. Premier Soccer Club, Inc., et al.*, No. 1691, September Term 2022. Opinion by Eyler, Deborah S., J.

**STATUTE OR ORDINANCE RULE - - HEALTH GENERAL § 14-501(b) - - NEGLIGENCE - - PROXIMATE CAUSATION**.

Fourteen-year-old player on private youth soccer team suffered a concussion during practice when she hit her head on the wall surrounding the indoor soccer field. She and her parents sued the team, the coach, two team parents, and certain employees of Baltimore County, which operated the indoor soccer field, for negligence, on two theories: 1) that they violated the Statute or Ordinance Rule by not making available to players, parents, and coaches certain information prescribed by statute; and 2) that they allowed the practice to take place on an inadequately lighted field. Summary judgment was granted to the team parents on the Statute or Ordinance Rule, for lack of proximate causation, and partial summary judgment was granted to the team and the coach. Evidence of the statute was ruled inadmissible, also on the basis of proximate cause. The case was tried on the negligent lighting claim, and the jury returned a defense verdict. The parents and daughter appealed, arguing that the court incorrectly ruled that on the undisputed material facts, there was legally insufficient evidence of proximate causation.

*Held*: Judgments affirmed. Health General ("HG") § 14-501(b) requires youth sports programs to make available to youth athletes, their parents/guardians, and coaches information about concussions and head injuries developed by the State Department of Education pursuant to the Education Article. Under the Statute or Ordinance Rule, proof that the appellees violated HG § 14-501(b) is evidence that the appellees violated a duty of care they owed to the appellants. To make out a *prima facie* case of negligence, however, the appellants also had to produce evidence that the violation of that duty was a proximate cause of the injury. Assuming, without deciding, that HG § 14-501 (b) was violated, there was no evidence of proximate causation. First, notwithstanding a specific request by the circuit court judge, the appellants failed to include in the summary judgment record the actual information that the statute required be provided. Second, even if we take judicial notice of the contents of the State Department of Education material that must be provided under HG § 14-501 (b), there is nothing in that material that, if provided, would have prevented or protected this player from sustaining a concussion. The material to be provided is general information about concussions and the importance of ceasing play after a head injury, and additional information about safeguarding players who have sustained concussions from returning to play too early. Most of the information concerns steps to be taken post-concussion. In this case, the player was removed from the field immediately and there was no issue regarding post-concussion care. The court correctly ruled that as a matter of law there was no evidence that providing the information would have made any difference in the outcome.

Circuit Court for Baltimore County
Case No.: C-03-CV-19-004228

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1691

September Term, 2022

_____

HOMER WALTON, ET AL.

v.

PREMIER SOCCER CLUB, INC., ET AL.

_____

Graeff,
Ripken,
Eyler, Deborah S.
   (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Eyler, Deborah S., J.
_____

Filed: March 1, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal concerns the necessary proof of proximate causation in a negligence action that is based on the "Statute or Ordinance Rule." That doctrine recognizes that, in some circumstances, "where there is an applicable statutory scheme designed to protect a class of persons which includes the plaintiff," a "defendant's duty ordinarily is prescribed by the statute or ordinance and the violation of the statute or ordinance is itself evidence of negligence." *Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 78 (2003) (cleaned up), *abrogated on other grounds by Ruffin Hotel Corp. of Md., Inc. v. Gasper*, 418 Md. 594 (2011).

In the Circuit Court for Baltimore County, Homer and Rebecca Walton, individually and as next friends of their daughter, Sydney Walton,[1] the appellants, filed suit for negligence against 1) Premier Soccer Club, Inc. ("Premier") and Lucio Gonzaga, Sydney's coach[2] ("the Premier Defendants"); 2) Michael and Dolores DeCarlo, parents of one of Sydney's teammates; and 3) Bob Smith, Kevin Parry, Mark Meszaros, and Mary Fasy, employees of the Baltimore County Department of Recreation and Parks ("the County Defendants"). They alleged that due to the appellees' negligence, Sydney sustained a traumatic brain injury ("TBI") during soccer practice at a Baltimore County indoor recreational facility.[3]

---

[1] For ease of discussion, we shall refer to the appellants collectively as the Waltons and to Sydney Walton individually by her first name.

[2] A second coach was named as a defendant in the complaint but was dismissed upon the filing of the first amended complaint.

[3] The Waltons also sued the Archdiocese of Baltimore and St. Ursula Parish. The circuit court dismissed those claims. That ruling is not challenged in this appeal.

The Waltons pursued two theories of negligence, one of which turned upon the Statute or Ordinance Rule. As we shall explain, the enactments at issue were an ordinance that controlled use permits for the recreational facility and a statute about providing concussion awareness materials to youth athletes. The concussion awareness statute is the focus of this appeal.

The DeCarlos were sued only on the negligence theory based on the Statute or Ordinance Rule. The circuit court granted summary judgment in their favor on the ground that, as a matter of law, their alleged violations of the permitting ordinance and the concussion awareness statute were not a proximate cause of Sydney's injury.

The negligence claims against the Premier Defendants and the County Defendants were based on a violation of the concussion awareness statute and a failure to properly light the field on which Sydney's team was practicing. The day before trial, the court granted partial summary judgment to the Premier Defendants on the ground that any violation of the concussion awareness statute was not a proximate cause of Sydney's injury. As a logical follow up to that ruling, it granted the Premier Defendants' motion *in limine* to preclude the Waltons from referencing that statute or its implementing regulations before the jury.

The case went to trial against the Premier Defendants and the County Defendants on the inadequate lighting negligence theory. The Waltons requested a jury instruction on the Statute or Ordinance Rule, which the court denied. On a special verdict, the jury found that none of the defendants were negligent and/or that their negligence was not a cause of Sydney's injury. Judgments were entered for the defendants.

2

On appeal, the Waltons pose five questions,[4] which we have combined and rephrased as two:

I.   Did the circuit court err by ruling that the alleged violations of Md. Code (2000, 2023 Repl. Vol.), section 14-501 of the Health General Article ("HG") and its implementing regulations were not a proximate cause of Sydney's injuries?

II.  Did the circuit court err by excluding evidence about HG § 14-501 at trial and/or by refusing to instruct the jury on the Statute or Ordinance Rule?

---

[4] The questions as posed by the Waltons are:

I. Whether Judge King erroneously failed to follow the Statute or Ordinance Rule when he determined that the DeCarlo Defendants' alleged violations of Md. Health Gen. Code § 14-501 and the permitting regulations and ordinances cited in the SAC were insufficient to demonstrate proximate cause for Sydney Walton's head injuries as a matter of law?

II. Whether Judge Barranco erroneously failed to follow the Statute or Ordinance Rule when he applied Judge King's proximate causation ruling to grant in-part summary judgment to Premier Soccer Club and Lucio Gonzaga to exclude during trial all references and evidence related to the statutory and regulatory violations alleged in the SAC, including those related to Md. Health Gen. Code § 14-501?

III. Whether Judge Barranco properly excluded evidence relevant to proving the defendants' violations of the statutory scheme alleged in the SAC, including violations of Md. Health Gen. Code § 14-501?

IV. Whether Judge Barranco properly refused to instruct the jury about the Statute or Ordinance Rule, as requested by the Plaintiffs?

V. Whether Judge Barranco properly found that Judge King's ruling regarding proximate cause was "the law of the case" such that Judge King's ruling was necessarily applicable and required the Court to grant in-part Premier Soccer Club and Lucio Gonzaga's second motion for summary judgment?

3

We answer these questions in the negative and shall affirm the judgments of the circuit court.

## LEGAL BACKGROUND

Before turning to the facts, we shall set out the law governing the Statute or Ordinance Rule and the statute and regulations upon which the Waltons rely. Generally, a plaintiff must establish four elements in any action for negligence:

> 1) that the defendant was under a duty to protect the plaintiff from injury, 2) that the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or injury proximately resulted from the defendant's breach of the duty.

*Hamilton v. Kirson*, 439 Md. 501, 523-24 (2014) (cleaned up) (quoting *Taylor v. Fishkind*, 207 Md. App. 121, 148 (2012)). It is well established, however, that "a statute or ordinance can prescribe a duty and that 'violation of the statute or ordinance is itself evidence of negligence.'" *Kiriakos v. Phillips*, 448 Md. 440, 457 (2016) (cleaned up) (quoting *Blackburn Ltd. P'ship v. Paul*, 438 Md. 100, 111 (2014)).

To make out a *prima facie* case of negligence under the Statute or Ordinance Rule, a plaintiff must satisfy a two-prong test. First, the plaintiff's injury "must be of a type which the statute or regulation was specifically designed to prevent" and the plaintiff must be "a member of the class that the statute or regulation was designed to protect." *Joseph v. Bozzuto Mgmt. Co.*, 173 Md. App. 305, 321-22 (2007). Second, "the violation of the statute [must be] the proximate cause of the injury." *Blackburn*, 438 Md. at 126. If both prongs are satisfied, the violation of the statute is evidence of negligence, but is not negligence *per se*. *Id*.

4

The Waltons alleged that the appellees violated HG § 14-501 and its implementing regulations. That statute provides, in pertinent part:

> (b)    (1) A youth sports program shall make available information on concussions, head injuries, and sudden cardiac arrest developed by the State Department of Education under §§ 7-433 and 7-436 of the Education Article to coaches, youth athletes, and the parents or guardians of youth athletes.
>
>     (2) A coach of a youth sports program shall review the information provided in paragraph (1) of this subsection.
>
> (c)    (1) A youth athlete who is suspected of sustaining a concussion or other head injury in a practice or game shall be removed from play at that time.
>
>     (2) A youth athlete who has been removed from play may not return to play until the youth athlete has obtained written clearance from a licensed health care provider trained in the evaluation and management of concussions.
>
> (d) Before a youth sports program may use a facility owned or operated by a local government, the local government shall provide notice to the youth sports program of the requirements of this section.

The statute defines a "youth athlete" to include an "individual who participates in an athletic activity in association with a youth sports program conducted . . . [b]y a recreational athletic organization." HG § 14-501(a)(4)(ii). A "youth sports program" is defined as a "program organized for recreational athletic competition or instruction for participants who are under the age of 19 years." HG § 14-501(a)(5).

Section 7-433 of the Education Article ("Ed.")[5] of the Maryland Code (1978, 2022 Repl. Vol.) governs concussion policy and awareness in Maryland public schools. It

_____

[5] The other cross-referenced section of the Education Article pertains to information about sudden cardiac arrest.

mandates that the Maryland State Department of Education ("MSDE") "develop policies and implement a program to provide awareness to coaches, school personnel, students, and the parents or guardians of students, in collaboration with [numerous agencies]" covering four topics: 1) "The nature and risk of a concussion or head injury;" 2) "The criteria for removal from and return to play;" 3) "The risks of not reporting injury and continuing to play;" and 4) "Appropriate academic accommodations for students diagnosed as having sustained a concussion or head injury." Ed. § 7-433(b)(1). That program was required to include verification that every coach received information on the program. Ed. § 7-433(b)(2). Further, before a public-school student could participate in school-based sports, the local board of education was required to "provide a concussion and head injury information sheet to the student and a parent or guardian of the student." Ed. § 7-433(b)(3)(i). That information sheet was to be created by the MSDE, but could be based upon publicly available materials created by the Centers for Disease Control and Prevention or other public health agencies. Ed. § 7-433(b)(3)(iii)-(4).

COMAR 13A.06.08 implements Ed. § 7-433 and HG § 14-501 "to establish a program of concussion awareness and prevention throughout the State of Maryland for student-athletes, their parents or guardians, and their coaches." COMAR 13A.06.08.01. The chapter incorporates by reference the "Policies and Programs on Concussions for Public Schools and Youth Sport Programs (Maryland State Department of Education, updated through December 2012)" ("MSDE Information"). COMAR 13A.06.08.03.

6

On December 13, 2017, Sydney, then age 14, practiced with her Premier team at the Northeast Regional Recreation Center ("the NERRC"), a Baltimore County owned facility located in Parkville. Premier did not have a permit to practice at the NERRC. Instead, it had received permission from Michael DeCarlo, the manager of St. Ursula Soccer, an Archdiocese of Baltimore Soccer Program team, to use St. Ursula's permit for that facility. Dolores DeCarlo volunteered as the "team mom" for Sydney's team and, in that capacity, sent messages about practice dates, times, and locations via a sports management application. When Mrs. DeCarlo notified Sydney's team about the practices at the NERRC, she directed them not to wear their Premier training kits and, if asked, to say they were there with St. Ursula.

On the night in question, Sydney's team practiced on Field 2 at the NERRC, which is one of two indoor soccer fields. That field is farther from the entrance and is bordered by a wooden wall that serves as the boundary line for indoor play and is considered part of the field. Coach Gonzaga ran the practice. As Sydney was engaging in a drill in which she attempted to steal the ball from another player, she and the other player collided. Sydney fell into the wooden wall bordering the field, hitting her head, causing a concussion. Her injury was addressed immediately. She no longer can play soccer and claimed to have sustained permanent injuries.

---

[6] There were significant disputes of fact below, but most are irrelevant to the issues on appeal. Because the central rulings by the trial court granted summary judgments for lack of proximate cause evidence, we present the facts in the light most favorable to the Waltons.

## The First Amended Complaint

In December 2019, the Waltons filed the instant lawsuit. In a subsequently filed four-count first amended complaint, they alleged that Sydney's accident occurred because the lights were off over Field 2. Specifically, because Sydney was "[u]nable to see adequately, [she] collided with another player and was knocked into the wall[.]"

In Count I, the Waltons set forth a claim for negligence against the DeCarlos, the Premier Defendants, and the County Defendants, alleging that they "intentionally and recklessly direct[ed]" Sydney's team to practice on an unlit indoor soccer field. Count II pertained only to the Archdiocese. Count III set forth a claim against Premier under a *respondeat superior* theory of liability premised on the alleged negligence of Coach Gonzaga and Mrs. DeCarlo in directing Sydney's team to practice on the unlit field. In Count IV, the Waltons alleged that the County[7] was liable for the tortious acts or omissions of the County Defendants under the Local Government Tort Claims Act; that the County Defendants knew or should have known about problems with the lights over Field 2; and that Mr. Smith, one of the County Defendants, negligently trained and supervised the other County Defendants.

## The Motions for Summary Judgment and the Second Amended Complaint

After a period for discovery, the Premier Defendants moved for summary judgment, on the ground that Sydney had assumed the risk of sustaining a concussion by playing a contact sport, regardless of the lighting conditions, and was contributorily negligent as a

---

[7] The County was not named as a defendant in the lawsuit.

matter of law. The DeCarlos moved for summary judgment on the ground that they did not owe a duty of care to Sydney as a matter of law and their role in securing a permit for use of the NERRC and/or advertising the practice times at the NERRC was not a proximate cause of Sydney's injury. Like the Premier Defendants, they also argued that Sydney's claims were barred under the assumption of the risk doctrine. The County Defendants did not move for summary judgment at that juncture.

A motions hearing was scheduled for November 22, 2021. Four days in advance of that hearing, the Waltons gave notice of their intent to rely upon additional authorities, including HG § 14-501 and COMAR Title 13A, Chapter 8. That same day, they filed a second amended complaint adding allegations that Baltimore County ordinances governing permitting for County-operated recreational facilities and HG § 14-501, together with its implementing regulations, created a statutory scheme designed to protect a class of persons – youth athletes – of which Sydney was a member, from a particular harm – concussions – which was the type of injury Sydney sustained. They set forth the same four counts but added allegations that Premier was trespassing at the NERRC when Sydney was injured and that the appellees violated HG § 14-501(b) or (d) and their violations of the statute were *prima facie* evidence of negligence. The Waltons did not attach copies of the MSDE Information or set forth the substance of those materials in either filing.

**The First Motions Hearing**

At the hearing, counsel for the Premier Defendants argued that the Waltons' claims were barred by assumption of the risk and/or contributory negligence. They maintained

9

that to the extent that Premier was trespassing at the NERRC, that was a tort against the County and there was no causal link between that trespass and Sydney's injury.

The Waltons' counsel responded that the Premier Defendants were ignoring the statutory scheme that governed the parties' responsibilities to provide Sydney, her parents, and Coach Gonzaga with the MSDE Information. The court asked counsel whether Sydney had been questioned about this at her deposition and if so whether she had "said that if she received [the MSDE Information], she wouldn't have played . . . ?" When counsel replied that Sydney had not been asked that question, the court inquired whether she had attested as much in an affidavit. Counsel replied that he had not secured an affidavit from Sydney, but that he did not think it mattered because he could show causation under the Statute or Ordinance Rule by proof that Sydney was within the class of persons the statute was designed to protect and the harm she suffered was the type of harm the statute intended to prevent.

The Premier Defendants replied that HG § 14-501 did not apply to Premier because it was a private club, not affiliated with a school. The court disagreed, noting that it "might apply" based on the broad definitions of "youth athlete" and "recreational athletic organization" in the statute. The Premier Defendants maintained that, in any event, the provision of the MSDE Information "has to do with the nature or extent of the injury[,]" not the risks of playing soccer, and consequently, assumption of the risk still barred the claims.

Counsel for the DeCarlos argued that they did not owe a duty of care to Sydney as a matter of law. On proximate causation, they argued that Mr. DeCarlo's conduct in

10

obtaining a permit for St. Ursula and letting Premier use it and Mrs. DeCarlo's conduct in advertising the practice to the team, even if in violation of a County ordinance, did not proximately cause Sydney's injury. The Waltons' counsel asserted that the statutory scheme of HG § 14-501 and its implementing regulations, coupled with County ordinances requiring a permit to use the NERRC, imposed a tort duty on the DeCarlos with regard to the provision of the MSDE Information. With respect to causation, counsel for the Waltons argued that had Mr. DeCarlo not unlawfully authorized Premier to use St. Ursula's permit, the County would have been aware of Premier's use of its facility and would have been obligated to inform Premier of the requirement that it provide the MSDE Information to Sydney, her parents, and Coach Gonzaga. Likewise, counsel argued that by advising the Premier families to hide their affiliation with the club at the practice, Mrs. DeCarlo had deprived the County of its opportunity to carry out its duties under HG § 14-501(d).

With respect to the DeCarlos, the court ruled:

> As to the DeCarlos, whether or not Mr. and Mrs. DeCarlo knowingly, unwittingly or negligently -- probably knowingly -- sought to avoid the requirements for a permit for Premier Soccer and perhaps even advised people not to advertise or advised the participants not to advise the fact that they were not part of the Saint Ursula's team, notwithstanding the arguments on the part of the Plaintiff, ***I don't find there to be any proximate cause in the failure to obtain a permit and/or the making available to the youth athletes information on concussion is not a proximate cause of the injuries in this case.***
>
> It just isn't. The DeCarlos may very well be li[able] to Baltimore County. But they are not li[able] to the Plaintiffs. ***The DeCarlos are out.***

(Emphasis added.)

11

The court denied the Premier Defendants' motion for summary judgment, however, concluding that the Waltons had generated a jury question on assumption of the risk and contributory negligence. The court did not comment on the Statute or Ordinance Rule theory as it applied to the Premier Defendants.

### The County Defendants' Motion for Summary Judgment

In August 2022, the County Defendants moved for summary judgment on the grounds of assumption of the risk and argued that there was no competent evidence that any alleged negligence by the County Defendants was the cause in fact of the injury to Sydney, which was incidental to playing soccer.

### The Premier Defendants' Second Motion for Partial Summary Judgment and Motion *in Limine*

In September 2022, the Premier Defendants filed a second motion for summary judgment, asserting that they were entitled to judgment on the Waltons' claim under the Statute or Ordinance Rule because the ruling as to the DeCarlos, that any violation of the permitting ordinance or HG § 14-501 "was not a proximate cause" of Sydney's injuries, was "the law of the case[.]"[8] At the same time, they moved *in limine* to preclude the Waltons from "mentioning trespass or violation of [HG §] 14-501 . . . at trial." In both motions, they argued, in part, that the Waltons had not adduced evidence that the Premier Defendants' failure to make the MSDE Information available to them was a cause in fact

---

[8] In December 2021, the Premier Defendants had moved to dismiss the second amended complaint, arguing that the new claim being raised under the Statute or Ordinance Rule was "barred by the law of the case." By order entered April 14, 2022, the circuit court denied that motion.

12

of Sydney's injury. Specifically, the Premier Defendants maintained that providing the MSDE Information to Sydney would not have protected her from falling and hitting her head on the wall at the NERRC unless it would have caused her or her parents to withdraw her from practice entirely; and there was no evidence to suggest that that would have occurred. Furthermore, if HG § 14-501 were intended to prevent youth athletes from suffering the type of harm Sydney suffered, the statute would have included preventive measures, such as requiring helmets, prohibiting unpadded walls at indoor facilities, or requiring a certain amount of space between the field of play and the perimeter walls.

The Waltons opposed both motions and moved for sanctions, arguing that the second motion for summary judgment was filed in bad faith and without substantial justification.

### The Pretrial Hearing

On October 24, 2022, the day before the trial commenced, the court heard argument on the pending motions for summary judgment and the motion *in limine*. It denied the County Defendants' motion, ruling that there were disputes of fact relative to assumption of the risk and contributory negligence that precluded the entry of judgment.

On the Premier Defendants' motion, the trial judge asked counsel for the Waltons to focus "on the causation aspect[,]" adding:

> I'm having troubling [sic] understanding how the information that might be given to coaches with respect to a concussion protocol, like if your player sustains a concussion then make sure you take them out of play or rest them or whatever, how that would be a proximate cause of the injury in this case unless you're going to tell me that she had prior concussions or something like that. Focus on the proximate causation issue that [the judge that ruled on summary judgment originally] was concerned with.

13

The court also questioned whether the Waltons were "making an argument that if [Sydney] had received the [MSDE] information that she would not have played on the team?"

The Waltons' counsel noted that the MSDE Information also should have been provided to Sydney's parents and Coach Gonzaga. He asserted that the MSDE Information "goes not just to, oh, what happens if a kid gets a concussion, do you take them out of play and all of that. No, there are requirements in the material that the coach is required by the statute to read about structuring a practice to avoid injury." The court asked counsel what he was "referring to when [he said] that there were instructions to the coach as to how to structure the practice?" and whether he could provide the materials to the court. Counsel replied that he had the MSDE Information "in the car" and characterized the materials as imposing a "duty" on a coach to "structure a practice with concussions in mind and safety in mind." Counsel took the position that Coach Gonzaga did not do that in this case because instead of running safe drills on the indoor field with a wall surrounding it, he directed the girls to run "full speed[.]"

The Waltons' counsel added that

> There were no warnings given to these kids. There were no warnings given to the parents. There was no discussion of you're playing on a shorter field right now, you're used to a long field outside. Listen, there is a big thick wall around this field. If you are getting close to the sideline, be careful. There were no warnings like that that [sic] and no instructions.
>
> If you read the [MSDE Information] that is what was supposed to happen and it didn't happen. That is the relevance of the statute.

According to counsel, so long as there was evidence that HG § 14-501 was designed to prevent concussions and that Sydney was in the class of persons that the statute was

14

designed to protect, a jury question was generated on causation under the Statute or Ordinance Rule and the grant of summary judgment was improper.

The court reiterated its earlier request for the MSDE Information: "Is it in the record as an attachment to one of the motions, the specific materials that you keep referring to?" The Waltons' counsel replied that it was not, but that it was "referenced in the Complaint" and the court could consider it. The court responded that the statute was referenced in the second amended complaint but the MSDE Information was not.

The court asked: "what is the exact thing or information that had it been given in this case that would have been done differently that would make a difference in the proximate causation chain of the accident and injury here?" The Waltons' counsel answered that "if Coach Gonzaga had complied with the Department of Education requirements for training to be structured or practices to be structured around safety --" The court interjected, asking "That's what I'm asking you about. What does it say about structuring a practice?" Counsel replied:

> There is a matrix at the end with responsibilities of different people and one of those is the coach or coaches, all coaches of a youth sports program. It says the coaches have these responsibilities and they are bullet points. One of those bullet points, and there are several that are relevant, but one of the bullet points says that the coach has to understand the game and structure the practice with safety in mind.
>
> So, with that instruction, this practice was not structured with safety in mind. He had kids running full speed, perhaps on a dimly lit field surrounded by a wooden wall. It is not even a soccer field. It is actually a lacrosse field, but they use it for soccer granted. You know, there was no structure to the practice to prevent this type of injury when clearly everybody can see the wall. Right? There is [sic] other things that could have been done to conduct a practice without a concussion risk.

15

I don't think that you can make that decision as a matter of law, judge. If the statute was violated and my client is within the class of persons to be protected, that becomes a jury question. You can't take that away from us. That is not appropriate because -- I'm sure I cited the cases. It doesn't come to my mind right now. There are several cases that say traditional proximate cause and tort are totally different; duty, foreseeability, Tort 101. Statutory violation, proximate cause is a totally different analysis.

Counsel for the Premier Defendants responded that the MSDE Information was not in the record and had been produced "just last week[,]" months after the close of discovery. He argued that the "litany of things" the Waltons now were arguing that Coach Gonzaga should or should not have done were not previously disclosed. Expert testimony would be required, in counsel's view, to support a claim that the practice was structured unsafely; the Waltons had not designated an expert on that subject.

The court ruled that the issue of proximate causation under the Statute or Ordinance Rule had been before the court (albeit another judge) in the original motions hearing in which summary judgment had been granted for the DeCarlos, and the court had determined at that time that "the failure to obtain a permit and/or in the making available to the youth athletes information on concussion[s]" was not a proximate cause of Sydney's injury. The court opined that it was

> still not hearing arguments or evidence in the record that whatever the information is that should have been conveyed under the statutory scheme in the Health [General] Article specifically would have changed the events in this case. I agree and I think it is the law of the case and I agree . . . that there is an absence of proximate cause with respect to those two claims.

On those bases, the court granted the Premier Defendants' motion for partial summary judgment, ruling that at trial the Waltons could not pursue a negligence claim premised on the Statute or Ordinance Rule.

16

In light of that ruling, the court granted the Premier Defendants' motion *in limine* to preclude mention of HG § 14-501 or any trespass violations at the NERRC. It clarified its ruling the following day, after hearing additional argument, explaining that the Waltons could present evidence that Premier did not have a permit to use the NERRC and that no team was scheduled to use Field 2 on the night in question, as that information was relevant to whether the lights were turned off over Field 2.

The Waltons' negligence claim against the Premier Defendants and the County Defendants, based on their allowing Sydney's team to practice on an unlit field, were tried to a jury over eight days. The evidence was disputed as to whether the lights were on or off over Field 2. As pertinent to the issues on appeal, the Waltons were allowed to elicit testimony that the County requires a permit for use of the NERRC fields, that St. Ursula Soccer had obtained a permit to use the NERRC on certain days in December 2017, that on Wednesday, December 13, 2017, its permit was for the use of Field 1 at the NERRC, and that no team was scheduled to practice on Field 2 after 5 p.m. that night.

As recounted above, the jury returned a verdict in favor of the defendants, and judgments were entered in their favor. This appeal followed.

We shall include additional facts in our discussion of the issues.

DISCUSSION

**I.**

**THE CIRCUIT COURT DID NOT ERR BY RULING THAT TO THE EXTENT THE WALTONS' NEGLIGENCE CLAIMS WERE BASED ON THE STATUTE OR ORDINANCE RULE, THEY COULD NOT PROVE PROXIMATE CAUSE, AS A MATTER OF LAW**

The Waltons' contentions turn upon the circuit court's legal determination that any violation of HG § 14-501 was not a proximate cause of Sydney's injury. With respect to the DeCarlos, that determination was made at the first summary judgment hearing. With respect to the Premier Defendants, it was made at the pre-trial hearing.[9] Consequently, our focus is upon the propriety of the proximate cause ruling. *See Newell v. Runnels*, 407 Md. 578, 608 (2009) (recognizing that, ordinarily, an appellate court will affirm the grant of summary judgment only upon the grounds relied upon by the trial court).

"It is a basic principle that '[n]egligence is not actionable unless it is a proximate cause of the harm alleged.'" *Pittway Corp. v. Collins*, 409 Md. 218, 243 (2009) (quoting *Stone v. Chicago Title Ins. Co. of Md.*, 330 Md. 329, 337 (1993)). "To be a proximate cause for an injury, 'the negligence must be 1) a cause in fact, and 2) a legally cognizable cause.'" *Id.* (quoting *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*, 335 Md. 135, 156-57 (1994)).

---

[9] The Waltons maintain that the trial court erred by relying upon the "law of the case" doctrine in deciding the issue of proximate causation with respect to the Premier Defendants. It is true that the law of the case doctrine did not apply. *See Peterson v. Orphans' Ct. for Queen Anne's Cnty.*, 160 Md. App. 137, 170 (2004) ("It is well settled that, while a case remains open, a judge presiding at a trial is free at any time during the trial to reconsider any prior ruling in the case, whether made by him or by another judge." (cleaned up)). Nevertheless, because the trial judge's ruling makes clear that he agreed on the merits with the motions court's earlier ruling on proximate causation and because we conclude, as a matter of law, that that ruling was correct, the court's reliance on this doctrine as an alternative basis for its ruling made no difference in the outcome.

"While proximate cause – both cause-in-fact and legal cause – analysis [ordinarily] is reserved for the trier of fact 'it becomes a question of law in cases where reasoning minds cannot differ.'" *Id*. at 253 (quoting *Segerman v. Jones*, 256 Md. 109, 135 (1969)). "If the trial court decision turns on a question of law," we review it *de novo*. *Blackburn*, 438 Md. at 108.

Maryland courts apply one of two tests to assess whether an actor's negligence was the cause in fact of an injury: the "but for" test or the "substantial factor" test. *Pittway*, 409 Md. at 244. The "but for" test applies "when the injury would not have occurred in the absence of the defendant's negligent act." *Yonce v. SmithKline Beecham Clinical Lab'ys, Inc*., 111 Md. App. 124, 138 (1996). The substantial factor test applies when "two or more independent negligent acts bring about an injury[.]" *Pittway*, 409 Md. at 244. In the latter case, "an actor's conduct is a cause-in-fact of the plaintiff's injuries when it is 'a substantial factor in bringing about the harm.'" *Levitas v. Christian*, 454 Md. 233, 250 (2017) (quoting *Pittway*, 409 Md. at 244, in turn quoting RESTATEMENT (SECOND) OF TORTS § 431 (1965)).

Legal causation, on the other hand, involves "considerations of fairness or social policy" to determine if a defendant should "be held legally responsible for the consequences of an act or omission." *Peterson v. Underwood*, 258 Md. 9, 16 (1970). That determination ordinarily turns on the foreseeability of the harm to the plaintiff. *See, e.g., Pittway*, 409 Md. at 246 ("[L]egal causation most often involves a determination of whether the injuries were a foreseeable result of the negligent conduct.").

When the alleged negligence is a violation of a statute or ordinance, legal causation may be determined by assessing "whether . . . the harm suffered is of a kind which the

19

drafters intended the statute to prevent." *Brooks*, 378 Md. at 79 (quotation marks and citation omitted). The cause in fact analysis does not differ, however. *See Blackburn*, 438 Md. at 126 (emphasizing that a plaintiff who relies upon a violation of a statute or regulation as evidence of negligence "must still produce facts that would allow a jury to reasonably conclude that [the injury occurred] because [of the violation]"). Because we conclude that the Waltons could not adduce any evidence that the failure to provide the MSDE Information to Sydney, her parents, and/or Coach Gonzaga was a cause in fact of her injury, the circuit court correctly determined as a matter of law that proximate causation was lacking under the Statute or Ordinance law theory of negligence.

The Supreme Court of Maryland's decision in *Blackburn* is instructive. There, a three-year-old boy, Christopher, suffered a near drowning in a pool in his apartment complex, resulting in his sustaining severe brain damage. *Id*. at 104. As pertinent here, Christopher's mother filed suit against the apartment complex, alleging that it violated COMAR regulations and local ordinances governing barriers around swimming pools and that the violations were evidence of negligence sufficient to create a jury question. After the circuit court granted summary judgment in favor of the complex, this Court reversed. *Paul v. Blackburn Ltd. P'ship*, 211 Md. App. 52 (2013). The Supreme Court granted *certiorari* and affirmed our decision.

The Court determined that a COMAR regulation requiring that the fence around a recreational swimming pool have no openings large enough "'to allow passage of a sphere 4 inches in diameter'" applied to the complex and that children under the age of five were within the protected class under that regulation. *Blackburn*, 438 Md. at 118, 121-22, 125

20

(emphasis omitted) (quoting COMAR 10.17.01.21A). Turning to causation, the Court reasoned that because Christopher was within that class and his injury was of the type the regulation was designed to prevent, the plaintiff had met its burden of production on legal causation. *Id*. at 126. The Court emphasized, however, that the plaintiff still was obligated to show cause in fact, *i.e.,* to "produce facts that would allow a jury to reasonably conclude that Christopher entered the pool because the gate violated COMAR." *Id*. The Court concluded that the plaintiff had adduced circumstantial evidence satisfying its burden of production. That evidence showed that Christopher's head measured 5.1 inches in diameter; that he was found in the pool near the entrance gate; that his clothing was located inside the fence near the gate; that a police detective at the scene observed that "there was 'a lot of play in the gate'" and that she was able to put her leg from the waist down through an opening in the gate; that a property manager for the complex measured "six inch spacing" at the gate; and that there was no evidence that Christopher's brother, who reported him missing, assisted him in climbing over the fence. *Id*. at 127. This evidence could support a reasonable inference by the trier of fact that "Christopher entered the pool by slipping through the allegedly defective gate." *Id*. at 127-128.

We return to the case at bar. We accept for purposes of this appeal only that Sydney was within the class of persons – youth athletes – that HG § 14-501 was enacted to protect and that her injury was the type the statute was designed to prevent. As *Blackburn* makes clear, however, to generate a jury question, the Waltons also were obligated to adduce

21

evidence from which a reasonable factfinder could conclude that Sydney fell into the wall and suffered a concussion *because* the appellees violated that statute.[10]

The Waltons alleged the following violations of HG § 14-501. First, Premier violated subsection (b)(1) by not "mak[ing] available information on concussions [and] head injuries" to Coach Gonzaga, Sydney, and her parents. Second, Coach Gonzaga violated subsection (b)(2) by not "review[ing] the information[.]" Third, the County Defendants violated subsection (d) by allowing Premier to use the NERRC without first "provid[ing] notice . . . of the requirements" of subsection (b). The Waltons did not allege that the DeCarlos directly violated HG § 14-501, but they did allege that Mr. DeCarlo's authorization for Premier to use St. Ursula's permit and Mrs. DeCarlo's instruction to the players to hide their affiliation with Premier when they did so had the effect of preventing the County Defendants from complying with their duties under subsection (d).[11] Thus, to show that the alleged violations of HG § 14-501 were a cause in fact of Sydney's injuries, the Waltons had to adduce evidence that would permit a reasonable juror to find that if Sydney and/or her parents had received the MSDE Information, she would not have practiced with her team or would have altered her behavior during practice so as to avoid the injury *or* that Coach Gonzaga's review of that same information would have caused

---

[10] During oral argument in this Court, counsel for the Waltons properly conceded that the Waltons were required to show cause in fact causation notwithstanding their reliance upon the Statute or Ordinance rule.

[11] Because the circuit court decided the DeCarlos' motion for summary judgment solely on the basis of proximate causation, we decline to address the alternative bases for affirmance advanced on appeal. By doing so, we do not suggest they lack merit.

him to modify the practice so as to prevent the injury to Sydney. There was no such evidence in the record. We explain.

The MSDE Information was not made part of the record at any time in the circuit court. This was so despite the trial court's repeated requests to see the information during the hearing on the Premier Defendants' second motion for summary judgment. Although counsel for the Waltons said he had the MSDE Information "in his car," he neither retrieved the materials nor offered the court a means to access them some other way, such as online. Thus, the Waltons did not submit into the record on summary judgment the only evidence with any potential to show that if the MSDE Information had been provided to Sydney, her parents, or Coach Gonzaga, in accordance with HG § 14-501 and its implementing regulations, that would have influenced them to alter their behavior or restructure the practice so that Sydney's injury would have been avoided. In the absence of any such evidence in the summary judgment, there was no evidence on which proximate causation could have been proven.

Even if the MSDE Information had been made a part of the summary judgment record in the circuit court, we would reach the same result. In a footnote in their brief in this Court, the Waltons included a hyperlink to the MSDE Information and argue that we should take judicial notice of it. An appellate court may take judicial notice of facts "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Md. Rule 5-201(b), (f). The hyperlink leads to a 5-page document titled "Policies and Programs on

23

Concussions for Public Schools and Youth Sport Programs (Updated December 2012)" authored by the MSDE, with ten attachments comprising an additional 17 pages. Because this document was produced by a State agency and is cross-referenced in the COMAR regulations implementing HG § 14-501, we take judicial notice of it for purposes of our analysis.

The introduction section states that the MSDE "developed policies and provided recommendations for the implementation of concussion awareness programs . . . for student-athletes, their parents or guardians, and their coaches" consistent with HG § 14-501 and Ed. § 7-433. *MSDE Information* at 1. The MSDE further "developed recommendations on the management and treatment of student-athletes suspected or diagnosed with having sustained a concussion." *Id*. One purpose of the information is to provide awareness about the "nature and risk of a concussion or head injury[.]" *Id.*

In a section entitled, "Coach's Education," the MSDE requires that coaches be "trained in concussion risk and management" including, at a minimum, learning about "[t]he nature of the risk of a brain injury[,]" "[t]he risk of not reporting a brain injury[,]" and the "[c]riteria for removal and return to play[.]" *Id*. at 2. The MSDE recommended as "Best Practices" that coaches have certain resources available to them on the field during "every practice or competition where a student-athlete could possibly sustain a concussion." *Id*. at 3. Those resources all pertain to recognizing the symptoms of a concussion and determining whether an athlete safely can return to play. *Id*.

The information for youth athletes and their parents or guardians is similar but does not include a requirement that they receive concussion awareness training. *Id*. at 3-4.

24

Attached and cross-referenced within this section are two one-page fact sheets produced by the "Heads Up" program of the Centers for Disease Control and Prevention, to be used for youth athletes and their parents. *Id*. at 7-8. Most of each fact sheet addresses recognizing the signs and symptoms of a concussion and determining next steps if an athlete or their parent believes they have suffered a concussion. *Id*. at 7-8. The final section of the athlete fact sheet, titled "How can I prevent a concussion?" states:

> Every sport is different, but there are steps you can take to protect yourself.
> - Use the proper sports equipment, including personal protective equipment. In order for equipment to protect you, it must be:
>   - The right equipment for the game, position, or activity
>   - Worn correctly and the correct size and fit
>   - Used every time you play or practice
> - Follow your coach's rules for safety and the rules of the sport.
> - Practice good sportsmanship at all times.

*Id*. at 7. Substantively identical information is provided in the parent fact sheet in a section titled, "How can you help your teen prevent a concussion?" *Id*. at 8.

The MSDE requires that each youth athlete and one parent or guardian acknowledge receiving information on concussions. *Id*. at 4. They also are required to verify in writing whether the youth athlete has "a history of traumatic head injury/concussion." *Id*. The recommended form for reporting prior traumatic head injuries asks if the "student ever experienced a traumatic head injury (a blow to the head)?" *Id*. at 10.

Other attachments to the MSDE Information include a medical clearance form for athletes being evaluated for a concussion, a "Graduated Return to Play Protocol," and a six-page chart titled "Case Management and Care Coordination – Roles and Responsibilities." That chart prescribes the "roles and responsibilities" of various team

25

members involved in the management of a ***"student with a suspected or diagnosed TBI/concussion" who is returning to school*** ("the Chart"). *Id*. at 15-20 (emphasis added). The Chart identifies 13 "Team Members," their roles, and their responsibilities. *Id*. "Coaches" are the final team members identified in the Chart. Their responsibilities include "[r]eview[ing] safety techniques, sportsmanship, and proper equipment with student athletes[,]" and "[u]nderstand[ing] the sport and creat[ing] drills, practice sessions, and instruction to reinforce safety." *Id*. at 20.

Contrary to counsel's arguments on summary judgment and in this Court, the MSDE Information does not require coaches to structure practices to avoid concussions. It mandates that training for a coach include four components: 1) "Understanding Concussions", 2) "Recognizing Concussions", 3) "Signs & Symptoms", and 4) "Responses and Action Plan[.]" None of these components provide directives on how to structure games or practices. Although counsel for the Waltons represented to the circuit court and to this Court that the Chart requires coaches to structure practices with the aim of avoiding concussions, by its plain language the Chart only applies to the management of a student athlete who already has experienced a traumatic brain injury or concussion and even then, only within a school setting.[12] Because there are no recommendations for structuring

---

[12] In this Court, the Waltons assert that Sydney was in that category because she had undergone brain surgery for a Chiari malformation, a condition in which part of the brain tissue is pushed into the spinal canal. Although there was deposition testimony in the record bearing on Sydney's brain surgery, neither a Chiari malformation nor brain surgery is a traumatic brain injury or concussion, both of which require a blow or jolt to the head. *See Traumatic brain injury*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/traumatic%20brain%20injury (last accessed Jan. 22, 2024); *Concussion*,

(continued…)

practices to avoid concussions, there is no causal link between Premier's alleged failure to provide this information to Coach Gonzaga and/or his failure to review the information and Sydney's injury during a practice drill.

The information that Sydney and her parents were entitled to receive under HG § 14-501(b) was primarily geared toward understanding and recognizing the signs and symptoms of concussions and ensuring proper reporting to parents, coaches, and medical personnel. The only "preventive" measures recommended pertained to personal protective equipment, following rules set by coaches for safety, and practicing good sportsmanship. None of these measures were relevant to the prevention of Sydney's injury, which occurred during a routine drill in which she tried to regain possession of the ball and fell into the side barrier wall.

There likewise was no evidence adduced that Sydney or her parents would have chosen not to allow her to participate in soccer, generally, or this soccer practice, specifically, had she and her parents received a basic fact sheet about concussions. Neither Sydney nor her parents were asked during deposition or submitted an affidavit stating that they would have changed their behavior had they received this information.

Unlike in *Blackburn*, where the regulation at issue directed property owners to ensure that barriers around a swimming pool met certain precise specifications that would prevent a small child from accessing the pool without an adult present to unlock the gate, here the statute mandated only the provision of basic concussion awareness materials. In

---

MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/concussion (last accessed Jan. 22, 2024).

27

*Blackburn*, the circumstantial evidence permitted an inference that but for the violation of the precise specifications, Christopher would not have been able to access the pool. Here, the evidence did not support a rational, non-speculative causal link between the failure to provide information about concussions and the conduct of Coach Gonzaga, Sydney, or her parents during a routine soccer practice. *See Davis v. Regency Lane, LLC*, 249 Md. App. 187, 216 (2021) ("Proof of causation cannot be based on mere speculation."). For all these reasons, the circuit court did not err by granting summary judgment in favor of the DeCarlos and partial summary judgment in favor of the Premier Defendants on the ground that proximate causation was lacking as a matter of law.

## II.

### THE TRIAL COURT DID NOT ERR BY GRANTING THE MOTION *IN LIMINE* AND DECLINING TO GIVE A JURY INSTRUCTION ON THE STATUTE OR ORDINANCE RULE

The trial court's decision to grant the Premier Defendants' motion *in limine* was predicated upon its summary judgment rulings. Because the court did not err by granting summary judgment in favor of the DeCarlos and the Premier Defendants on the ground of lack of proximate causation between the alleged statutory violations and the injury to Sydney, it also did not err by excluding evidence bearing upon that alleged violation.[13] The statutory violation only was relevant to the extent that it was evidence of negligence. The court was flexible in the application of its ruling and did allow the Waltons to present

---

[13] Although the County Defendants did not move for summary judgement based on the Statute or Ordinance Rule, they benefited from the preclusion of evidence bearing upon their responsibilities under HG § 14-501(d).

evidence at trial concerning the lack of permitting as circumstantial evidence supporting its theory that the overhead lights were off over Field 2.

The court likewise did not err by declining to propound Maryland Civil Pattern Jury Instruction 19:7, which states: "The violation of a statute, which is a cause of plaintiff's injuries or damages, is evidence of negligence." Because the court properly precluded that theory of negligence from being presented at trial, it did not err by not instructing the jury on it.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANTS.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/1691s22cn.pdf